Steve W. Berman (*pro hac vice* to be filed)
*steve@hbsslaw.com*
Thomas E. Loeser (SBN 202724)
*toml@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Christopher R. Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

Attorneys for Plaintiffs
[*Additional counsel listed on signature page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA EVANS, KERICHA KENNEDY, MINDA BRIADDY, and ANTHONY VACCHIO, individually and on behalf of all others similarly situated, | Case No.  8:22-cv-00300 |
| | **CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| HYUNDAI MOTOR COMPANY, HYUNDAI MOTOR AMERICA, KIA CORPORATION, and KIA AMERICA, INC., | |
| Defendants. | |

1

## TABLE OF CONTENTS

2

**Page**

3

4

I.      INTRODUCTION .................................................................. 1

5

II.     JURISDICTION AND VENUE ............................................. 4

6

III.    PARTIES ............................................................................... 5

7

        A.     Plaintiffs ................................................................... 5

8

        B.     Defendants ................................................................ 7

9

10

IV.     FACTUAL ALLEGATIONS ................................................. 9

11

        A.     The Electrical Fire Defect ....................................... 9

12

        B.     The Electrical Fire Defect results in a serious risk of
               spontaneous fires across multiple models and years of
13             Defendants' vehicles, and Defendants were aware of such
14             dangers. ................................................................... 11

15             1.     NHTSA and other online complaints evidence the
                      Electrical Fire Defect in Class Vehicles going back as
16                    far as 2011 ..................................................... 12

17

18             2.     Warranty claims, part sales, and customer complaints
                      lodged with Defendants also alerted Defendants to the
19                    Electrical Fire Defect. ................................... 39

20             3.     Defendants' belated, piecemeal, inadequate, and
21                    incomplete recalls evidence Defendants' knowledge
                      of the Electrical Fire Defect. ......................... 41

22

23             4.     Defendants knew or should have known about the
                      Electrical Fire Defect given Defendants' rigorous pre-
24                    sale durability testing. .................................. 46

25      C.     Despite knowledge of the Electrical Fire Defect, Defendants
26             marketed the Class Vehicles as safe, durable, and reliable. ................ 50

27      D.     Defendants' warranties for Class Vehicles ........................... 52

28

---

V.      CLASS ALLEGATIONS ................................................................. 53

        A.      Class Definitions ............................................................. 53

        B.      Class Action Requirements ............................................. 55

VI.     TOLLING OF STATUTES OF LIMITATIONS ........................... 58

        A.      The discovery rule justifies tolling. ............................... 58

        B.      Fraudulent concealment justifies tolling. ....................... 59

        C.      Estoppel justifies tolling. ............................................... 59

VII.    CALIFORNIA LAW APPLIES TO THE CLAIMS OF THE
        NATIONWIDE CLASS ............................................................... 60

VIII.   CLAIMS ALLEGED ..................................................................... 61

COUNT I  VIOLATIONS OF THE CALIFORNIA CONSUMER
        LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*)
        (ON BEHALF OF THE NATIONWIDE CLASS) .......................... 61

COUNT II  VIOLATIONS OF THE CALIFORNIA UNFAIR
        COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200)
        (ON BEHALF OF THE NATIONWIDE CLASS) .......................... 63

COUNT III  VIOLATIONS OF CALIFORNIA FALSE ADVERTISING
        LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*) (ON
        BEHALF OF THE NATIONWIDE CLASS) ................................ 65

COUNT IV  VIOLATIONS OF THE SONG-BEVERLY ACT –
        BREACH OF IMPLIED WARRANTY (CAL. CIV. CODE
        § 1790, *ET SEQ.*) (ON BEHALF OF THE NATIONWIDE
        CLASS) ........................................................................................ 66

COUNT V  VIOLATIONS OF THE MINNESOTA PREVENTION OF
        CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, ET SEQ.)
        (ALLEGED BY PLAINTIFF VACCHIO ON BEHALF OF THE
        MINNESOTA CLASS) .................................................................. 68

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT VI  VIOLATIONS OF MINNESOTA UNIFORM DECEPTIVE
TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48,
ET SEQ.) (ALLEGED BY PLAINTIFF VACCHIO ON BEHALF
OF THE MINNESOTA CLASS)..................................................... 71

COUNT VII  VIOLATIONS OF THE MISSISSIPPI CONSUMER
PROTECTION ACT (MISS. CODE ANN. § 75-24-1, *ET SEQ.*)
(ALLEGED BY PLAINTIFFS EVANS ON BEHALF OF THE
MISSISSIPPI CLASS) ..................................................................... 74

COUNT VIII  BREACH OF MISSISSIPPI'S IMPLIED WARRANTY
OF MERCHANTABILITY (MISS. CODE ANN. § 75-2-314))
(ALLEGED BY PLAINTIFF EVANS ON BEHALF OF THE
MISSISSIPPI CLASS) ..................................................................... 77

COUNT IX  VIOLATION OF NEW YORK GENERAL BUSINESS
LAW § 349 (DECEPTIVE ACTS AND PRACTICES) (N.Y. GEN.
BUS. LAW § 349) (ALLEGED BY PLAINTIFF BRIADDY ON
BEHALF OF THE NEW YORK CLASS) ...................................... 78

COUNT X  VIOLATION OF THE NEW YORK FALSE
ADVERTISING ACT (N.Y. GEN. BUS. LAW § 350) (ALLEGED
BY PLAINTIFF BRIADDY ON BEHALF OF THE NEW YORK
CLASS) ............................................................................................ 79

COUNT XI  BREACH OF NEW YORK'S IMPLIED WARRANTY OF
MERCHANTABILITY (N.Y. U.C.C. LAW §§ 2-314; 2A-212)
(ALLEGED BY PLAINTIFF BRIADDY ON BEHALF OF THE
NEW YORK CLASS) .................................................................... 81

COUNT XII  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
PRACTICES AND CONSUMER PROTECTION ACT (TEX.
BUS. & COM. CODE § 17.4 ET SEQ.) (ALLEGED BY
PLAINTIFF KERICHA KENNEDY ON BEHALF OF THE
TEXAS CLASS) ............................................................................. 81

COUNT XIII  BREACH OF IMPLIED WARRANTY (TEX. BUS. &
COM. CODE § 2.314) (ALLEGED BY PLAINTIFF KERICHA
KENNEDY ON BEHALF OF THE TEXAS CLASS)................... 84

COUNT XIV  FRAUD BY CONCEALMENT (COMMON LAW)
(ALLEGED BY ALL PLAINTIFFS ON BEHALF OF THE
NATIONWIDE CLASS OR, ALTERNATIVELY, THE STATE
SUBCLASSES) ................................................................... 86

COUNT XV  BREACH OF EXPRESS WARRANTY (ALLEGED BY
ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE
CLASS OR, ALTERNATIVELY, THE STATE SUBCLASSES) ................ 90

COUNT XVI  VIOLATIONS OF THE MAGNUSON-MOSS
WARRANTY ACT (15 U.S.C. § 2301, *ET SEQ.*) (ALLEGED BY
ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE
CLASS OR, ALTERNATIVELY, THE STATE SUBCLASSES) ................ 91

COUNT XVII  BREACH OF THE DUTY OF GOOD FAITH AND
FAIR DEALING (ALLEGED BY ALL PLAINTIFFS ON
BEHALF OF THE NATIONWIDE CLASS OR,
ALTERNATIVELY, THE STATE SUBCLASSES) ...................................... 95

REQUEST FOR RELIEF ....................................................................... 97

DEMAND FOR JURY TRIAL ................................................................ 97

Plaintiffs file this lawsuit individually and on behalf of a class. Plaintiffs allege as follows, based on personal knowledge as to their own acts and experiences, and, as to all other matters, based on the investigation of counsel and experts:

## I.    INTRODUCTION

1.    The most important duty of a car manufacturer is to provide consumers with a safe car. A second related duty is to warn consumers and fix a car where the manufacturer learns of a vehicle defect that implicates serious safety issues.

2.    Hyundai and Kia breached these fundamental duties by selling vehicles they knew were defective, prone to electrical short-circuits, and posed an unreasonable risk of non-collision engine fires.

3.    Certain Hyundai and Kia vehicles ("Class Vehicles")[1] contain a defective Hydraulic Electronic Control Unit ("HECU") in the Anti-Lock Brake System ("ABS"), located in the engine compartment, that can short circuit and ignite, presenting consumers with an unacceptable risk of engine fire while driving or even when the car is parked and turned off. Specifically, moisture can accumulate within the HECU (also known as the ABS control module), which maintains an electrical charge even when the vehicle is off. Moisture entering the electrified ABS control module can form a short circuit, increasing the chances of spontaneous fire eruption in the vehicle's engine compartment (the "Electrical Fire Defect").

_____

[1] On information and belief, the Class Vehicles include, but are not limited to: model year ("MY") 2006-2011 Hyundai Azera; MY 2007-2010 Hyundai Elantra; MY 2009-2011 Hyundai Elantra Touring; MY 2007-2008 Hyundai Entourage; MY 2015-2016 Hyundai Genesis; MY 2017-2020 Hyundai Genesis G80; MY 2007, 2016-2018 Hyundai Santa Fe; MY 2013-2015, 2017-2018 Hyundai Santa Fe Sport; MY 2019 Santa Fe XL; MY 2006 Hyundai Sonata; MY 2014-2021 Hyundai Tucson; MY 2017-2019 Kia Cadenza; MY 2016-2018 Kia K900; MY 2013-2015 Kia Optima; MY 2006-2010 Kia Sedona; MY 2007-2009, 2014-2015 Kia Sorento; MY 2008-2009, 2014-2021 Kia Sportage; MY 2018-2021 Kia Stinger; and MY 2020 Kia Telluride. Plaintiffs reserve the right to supplement or amend the Class Vehicles after conducting discovery and further investigation.

4.      The Electrical Fire Defect exposes putative class members to an unreasonable and increased risk of accident, injury, death, or property damage should their vehicle's engine catch fire while in operation, let alone spontaneously ignite while the vehicle is parked at the class member's home or in a public parking lot. The Electrical Fire Defect also exposes passengers, other drivers on the road, neighbors, and other bystanders to an unreasonable and increased risk of accident, injury, death, or property damage.

5.      The Electrical Fire Defect plagues an ever-increasing number of Hyundai and Kia vehicle models, years, and engines, including the Class Vehicles. Many putative class members, including Plaintiff Kericha Kennedy, have already experienced a catastrophic engine fire because of the Electrical Fire Defect, costing them thousands of dollars. What's worse, Hyundai and Kia do not have an adequate remedy and they have directed consumers to park their vehicles outside and away from structures until a fix is available. This too unfairly burdens class members who are unable to enjoy the convenience of their garages, especially in very cold and very hot climates.

6.      The catastrophic engine fire risk is the direct result of a defect known to, concealed by, and still unremedied by Hyundai and Kia. Not only did Hyundai and Kia actively conceal the Electrical Fire Defect from consumers, but they also concealed its consequences, including the serious safety hazards and monetary harm caused by the Electrical Fire Defect—*e.g.*, damage to a home and injury or death to persons inhabiting that home should the HECU spontaneously ignite while the Class Vehicle is parked in an attached garage.

7.      Hyundai and Kia knew or should have known about the Electrical Fire Defect as evidenced by: (1) consumer complaints lodged with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online; (2) warranty claims, part sales, and consumer complaints lodged with Hyundai and Kia directly; (3) current

and earlier safety recalls issued by Hyundai and Kia in an attempt to address the Electrical Fire Defect; and (4) Hyundai and Kia's own pre-sale durability testing of the Class Vehicles.

8.      Despite Hyundai and Kia's longstanding knowledge of the Electrical Fire Defect in the Class Vehicles, the automakers have issued piecemeal and belated recalls over the last six years. On information and belief, only after the number of complaints about the Electrical Fire Defect increased and consumers grew mistrustful of these vehicles did Hyundai and Kia publicly acknowledge the Electrical Fire Defect inherent in the Class Vehicles and issue recalls.

9.      Hyundai and Kia's purported remedies for the Electrical Fire Defect under these recalls are only a band-aid and fail to adequately cure the Defect, while also failing to reimburse vehicle owners and lessees for out-of-pocket expenses, loss of use, or loss of value. These recall repairs are also not readily available, so vehicle owners and lessees are left without a safely operable vehicle for unknown and often lengthy periods.

10.      Meanwhile, Hyundai and Kia refuse to fix the Electrical Fire Defect at no cost in unrecalled vehicles, even within the warranty period. Hyundai and Kia have also denied warranty claims for the Defect when it manifests after expiration of the warranty period despite their knowledge of the Defect at the time of sale.

11.      Because of Hyundai and Kia's unfair, misleading, deceptive, and fraudulent business practices in failing to disclose the Electrical Fire Defect to Plaintiffs and putative class members, owners and lessees of Class Vehicles are injured in fact, incurred damages, and suffered ascertainable losses in money and property. Had Plaintiffs and the putative class members known of the Electrical Fire Defect, they would not have purchased or leased those vehicles, or would have paid substantially less for them. Engine fire in the Class Vehicles also requires expensive repairs, car rentals, car payments, towing charges, property damage, time off work,

other miscellaneous costs, and loss of use. Moreover, because of the Electrical Fire Defect and Hyundai and Kia's concealment, the Class Vehicles have a lower market value and are inherently worth less than they otherwise would be.

12.     Plaintiffs bring this consolidated class action to redress Hyundai and Kia's widespread misconduct. Plaintiffs seek damages and a repair under state consumer-protection statutes and common law.

## II.    JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are one hundred or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Defendants by virtue of their transactions and business conducted in this judicial district, and because Defendants are headquartered in California. Defendants have transacted and done business, and violated statutory and common law, in the State of California and in this judicial district.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants transact substantial business and are headquartered in this district. Defendants advertised in this district and received substantial revenue and profits from sales and/or leases of the Class Vehicles in this district. Defendants also have a manufacturing plant in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   PARTIES

### A.   Plaintiffs

16.     Plaintiff and proposed class representative **Brenda Evans** is a resident and citizen of Crystal Springs, Mississippi. She purchased a used 2014 Hyundai Santa Fe on June 25, 2018, from Stan King GM Superstore in Brookhaven, Mississippi. Ms. Evans's Santa Fe is a Class Vehicle equipped with the Electrical Fire Defect. Through her exposure and interaction with Hyundai, Ms. Evans was aware of Hyundai's uniform and pervasive marketing message of dependability and safety, upon which she relied, and which was a primary reason she purchased the Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Electrical Fire Defect to her. Ms. Evans regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Electrical Fire Defect and believes that its market value is diminished as a result. Ms. Evans would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

17.     Plaintiff and proposed class representative **Kericha Kennedy** is a resident and citizen of Temple, Texas. She purchased a new 2020 Kia Telluride on or about July 23, 2020, from Kia Southwest in Austin, Texas. Ms. Kennedy's Kia Telluride is a Class Vehicle equipped with the Electrical Fire Defect. Through her exposure and interaction with Kia, Ms. Kennedy was aware of Kia's uniform and pervasive marketing message of dependability and safety, upon which she relied, and which was a primary reason she purchased the Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia or their agents, dealers, or other representatives disclose the Electrical Fire Defect to her. Ms. Kennedy had the vehicle for approximately one month. Ms. Kennedy would not

CLASS ACTION COMPLAINT – 5
Case No. 8:22-cv-00300
011082-11/1808185 V1

have purchased the vehicle, or she would have paid less for it, had she known about the Electrical Fire Defect.

18.    On August 16, 2020, Ms. Kennedy's vehicle erupted into flames while parked and not running in Ms. Kennedy's garage. The vehicle was totaled and there was substantial damage to Ms. Kennedy's home, belongings, and her other vehicles. Ms. Kennedy has suffered an ascertainable loss because of Defendants' omissions and misrepresentations associated with the Electrical Fire Defect, including, but not limited to, out of pocket losses associated with the Electrical Fire Defect, out of pocket losses associated with car fire, diminished value of her vehicle, increased risk to her safety, and other consequential damages. Ms. Kennedy would not have purchased the vehicle had she known about the Electrical Fire Defect.

19.    Plaintiff and proposed class representative **Anthony Vacchio** is a resident and citizen of Annandale, Minnesota. He purchased a used 2016 Hyundai Santa Fe on or about January 24, 2022, from Apple Used Autos in Shakopee, Minnesota. Mr. Vacchio's Santa Fe is a Class Vehicle equipped with the Electrical Fire Defect. Through his exposure and interaction with Hyundai, Mr. Vacchio was aware of Hyundai's uniform and pervasive marketing message of dependability and safety, upon which he relied, and which was a primary reason he purchased the Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Electrical Fire Defect to him. Mr. Vacchio regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Electrical Fire Defect and believes that its market value is diminished as a result. Mr. Vacchio would not have purchased the vehicle, or he would have paid less for it, had he known about the Electrical Fire Defect.

20.    Plaintiff and proposed class representative **Minda Briaddy** is a resident and citizen of Saranac Lake, New York. She purchased a used 2014 Hyundai Santa Fe

on or about September 15, 2017, from Garvey Hyundai North in Plattsburgh, New York. Ms. Briaddy's Hyundai Santa Fe is a Class Vehicle equipped with the Electrical Fire Defect. Through her exposure and interaction with Hyundai, Ms. Briaddy was aware of Hyundai's uniform and pervasive marketing message of dependability and safety, upon which she relied, and which was a primary reason she purchased the Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Electrical Fire Defect to her. Ms. Briaddy regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Electrical Fire Defect and believes that its market value is diminished as a result. Ms. Briaddy would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

**B.     Defendants**

21.     Defendant Hyundai Motor Company ("Hyundai Motor") is a South Korean multinational automaker headquartered in Seoul, South Korea. Hyundai Motor, together with Defendants Kia Corporation, Kia America, Inc., and Hyundai Motor America, comprise the Hyundai Motor Group, which manufactures the Class Vehicles at issue in this Complaint. Hyundai Motor is the parent corporation of Hyundai Motor America.

22.     Defendant Hyundai Motor America ("Hyundai America") is an automobile design, manufacturing, distribution, and/or service corporation doing business within the United States. Hyundai America designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Hyundai Class Vehicles.

23.     Defendant Hyundai America is incorporated and headquartered in the state of California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Hyundai America is the American sales,

marketing, and distribution arm of its parent company, Hyundai Motor, overseeing sales and other operations across the United States. Hyundai America distributes and sells a complete line of Hyundai vehicles through more than 800 dealers throughout the United States. Money received from the purchase or lease of a Hyundai vehicle from a dealership flows from the dealer to Hyundai America and Hyundai Motor (together, "Hyundai"). Hyundai uses its nationwide dealerships to communicate with Plaintiffs and putative class members.

24.     On information and belief, Defendant Hyundai America is responsible for the distribution, service, repair, installation, and decisions regarding the Hyundai Class Vehicles as they relate to the Electrical Fire Defect.

25.     On information and belief, Defendant Hyundai America developed the post-purchase owner's manuals, warranty booklets, and other information related to maintenance recommendations and/or schedules for the Hyundai Class Vehicles.

26.     Defendant Hyundai America engages in continuous and substantial business in California.

27.     Defendant Kia Corporation ("Kia Corp.") is a South Korean multinational automaker headquartered in Seoul, South Korea. Kia Corp. is the parent corporation of Kia America, Inc. As of December 31, 2020, Defendant Kia Corp.'s largest shareholder is Hyundai Motor, which holds 33.88 percent of Kia Corp.'s stock.[2]

28.     Defendant Kia America, Inc. ("Kia America") is an automobile design, manufacturing, distribution, and/or service corporation doing business within the United States. Kia America designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Kia Class Vehicles.

---

[2] 2019-2020 Hyundai Motor Annual Report, https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/ir/financial-statements/hyundai-motor-company-annual-2020-consolidated-final-v2.pdf (last visited Feb. 24, 2022).

29.     Defendant Kia America is incorporated and headquartered in the state of California with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606. Kia America is the American sales, marketing, and distribution arm of its parent company, Kia Corp., overseeing sales and other operations across the United States. Kia America distributes and sells a complete line of Kia vehicles through more than 755 dealers throughout the United States. Money received from the purchase or lease of a Kia vehicle from a dealership flows from the dealer to Kia America and Kia Corp. (together, "Kia"). Kia uses its nationwide dealerships to communicate with Plaintiffs and putative class members.

30.     On information and belief, Defendant Kia America is responsible for the distribution, service, repair, installation, and decisions regarding the Kia Class Vehicles as they relate to the Electrical Fire Defect.

31.     On information and belief, Defendant Kia America developed the post-purchase owner's manuals, warranty booklets, and other information related to maintenance recommendations and/or schedules for the Kia Class Vehicles.

32.     Defendant Kia America engages in continuous and substantial business in California.

33.     On information and belief, the design, manufacture, modification, installation, and decisions regarding the Class Vehicles and the HECUs were made exclusively by Defendants.

## IV.     FACTUAL ALLEGATIONS

### A.     The Electrical Fire Defect

34.     The Class Vehicles are equipped with an anti-lock brake system ("ABS") that modulates brake pressure to prevent the wheels from locking up, thereby allowing the driver to maintain control and stop the car as quickly as possible. ABS is a critical safety element of the Class Vehicles and these systems are required in all vehicles sold in the United States.

35.     The ABS consists of the wheel sensors and the control module that connect to the vehicle's hydraulic brake system. The ABS control module is typically located in the vehicle's engine compartment, and the wheel sensors are attached to the tires, near the brake rotors. The ABS control module is connected to and powered by the vehicle's electrical fuse box.

36.     Because the ABS control module is made up of both the Hydraulic Control Unit (HCU) and the Electronic Control Unit (ECU), it is also referred to as the HECU (Hydraulic Electronic Control Unit). Hyundai and Kia use the terms ABS module and HECU interchangeably when referring to the same component, including in the Class Vehicles' recalls.

37.     Because the HECU requires an electrical current during operation, the component must be carefully sealed to avoid moisture or liquid reaching its circuits, which can cause corrosion or short circuit.

38.     On information and belief, the HECU in the Class Vehicles is inadequately seal around its electronic components, permitting moisture—either from hydraulic fluid or other sources—to penetrate the seal and contact the electronic components in the HECU. The HECU also remains charged even when the car is not running. The moisture contacting the charged electronic components causes a short circuit.

39.     A short circuit can cause spontaneous fire in the HECU, which can quickly spread throughout the engine compartment and the entire car. The Electrical Fire Defect poses serious safety issues for operators and occupants of Class Vehicles, as well as uninvolved bystanders. For example, Plaintiff Kennedy's car ignited into flames when it was parked and not running in Ms. Kennedy's garage. The fire spread and caused extensive damage to Ms. Kennedy's other vehicle and her home. Other fire incidents in Class Vehicles reported to NHTSA plainly illustrate the danger involved when cars can spontaneously erupt into flames, while being driven and while parked.

40.     Defendants failed to adequately research, design, test, and manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and reasonably foreseeable manner.

**B.     The Electrical Fire Defect results in a serious risk of spontaneous fires across multiple models and years of Defendants' vehicles, and Defendants were aware of such dangers.**

41.     On information and belief, Defendants knew or should have known about the Electrical Fire Defect as evidenced by: (1) consumer complaints lodged with NHTSA and elsewhere online; (2) warranty claims, part sales, and consumer complaints lodged with Hyundai and Kia directly; (3) technical service bulletins and safety recalls issued by Hyundai and Kia in an attempt to address the Electrical Fire Defect; and (4) Hyundai and Kia's own pre-sale durability testing of the Class Vehicles.

42.     Defendants also should have known about the Electrical Fire Defect based on historical ABS module leaks in their vehicles that, not coincidentally, were mishandled by Hyundai America and resulted in administrative penalties. In October 2013, Hyundai America recalled 2009-2012 Hyundai Genesis vehicles due to a defect where brake fluid entered and corroded the module. Hyundai admitted a corroded HECU could affect braking effectiveness and increase the risk of a crash.

43.     Hyundai did not recall the vehicles until a year after learning about the defect from the HECU supplier, and even though another automaker using the same component recalled their cars more than a year before. In 2014, Hyundai was fined $17.35 million for failing to timely report the HECU corrosion defect.[3] NHTSA

---

[3] *Hyundai Agrees to Pay $17.35 Million Fine in Brake Defect Case*, NHTSA (Aug. 7, 2014), https://one.nhtsa.gov/About-NHTSA/Press-Releases/Hyundai%E2%80%93agrees%E2%80%93to%E2%80%93pay%E2%80%93$17.35%E2%80%93million%E2%80%93fine.

determined Hyundai knowingly withheld information about the dangerous safety defect from vehicle owners and delayed issuing a recall. Further, the related consent decree required Hyundai to maintain a Technical Committee for review all potential defects and consider the necessity of safety recalls. On information and belief, this Technical Committee knew or should have known about the Electrical Fire Defect based on its function and role.

1. **NHTSA and other online complaints evidence the Electrical Fire Defect in Class Vehicles going back as far as 2011.**

44. Plaintiff Kennedy's experience is not an isolated or outlying occurrence. The internet is replete with consumer complaints about the Electrical Fire Defect in the Class Vehicles. Hyundai and Kia's customer relations departments routinely monitor the internet for customer complaints, and Hyundai has retained the services of third parties to do the same. Their customer relations divisions regularly receive and respond to customer calls concerning, *inter alia*, product defects. Through these sources, Hyundai and Kia were made aware of the Electrical Fire Defect. The complaints also indicate Hyundai and Kia's knowledge of the Defect and its potential danger.

45. All vehicle manufacturers, including Defendants, are required by law (backed by criminal penalties) to routinely monitor and analyze NHTSA complaints to determine whether vehicles or automotive components should be recalled due to safety concerns. Thus, Defendants have knowledge of all NHTSA complaints. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

46. Complaints submitted to Defendants and to NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal many of Defendants' vehicles catching on fire.

47. In the NHTSA database, scores of drivers of Class Vehicles have reported spontaneous fires erupting in their engine compartments.

48.     As far back as April 2011, one such complaint was lodged with NHTSA by the owner of a 2010 Hyundai Elantra, stating that the "6-month old Hyundai Elantra Touring caught fire after sitting in [the] driveway for nine hours."[4] After a forensic engineer inspected the vehicle, they correctly "concluded that the fire was electrical and originated in the engine compartment." At that time, Defendants had yet to issue any recalls or publicly acknowledge any defect in the Class Vehicles resulting in spontaneous engine compartment fires.

49.     Reproduced below is a representative sampling[5] of the NHTSA complaints related to Class Vehicles. This sample includes some early complaints, some harrowing reports of fires, as well as more recent complaints showing the ongoing nature of the Electrical Fire Defect. Some complaints occurred at low mileage, indicating that the Defect manifested well within the range Defendants tested for in their pre-sale durability testing (discussed below in Section IV.B.4.), and well before the initial vehicle warranties expired. Some complaints also expressly mention that the drivers took their vehicles to Defendants' dealers and that the manufacturers were notified.

50.     NHTSA complaints:[6]

**Hyundai Elantra MY 2007-2010**

October 27, 2021 NHTSA ID NUMBER: 11438336
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11438336
Incident Date October 26, 2021
Consumer Location REGISTER, GA
Vehicle Identification Number KMHDU46D87U****

---

[4] NHTSA ID No.: 10398944.
[5] *See generally Safety Issues and Recalls*, NHTSA, https://www.nhtsa.gov/recalls (last visited Feb. 24, 2022).
[6] These complaints are reproduced litteratim. Typos and misspellings are in the originals.

Summary of Complaint: The contact owns a 2007 Hyundai Elantra. The contact stated that after parking and attempting to restart the engine smoke was present coming from under the vehicle. The contact opened the hood and discovered flames were present coming from within the engine compartment. The fire department was called to the scene and extinguished the flames. A fire report and police report was taken at the scene. The vehicle was towed to the home. The cause of the failure was not yet determined. The manufacturer was notified of the failure. The local dealer was not notified. The failure mileage was 176,000.

October 12, 2021 NHTSA ID NUMBER: 11436505
Components: SERVICE BRAKES, ENGINE
NHTSA ID Number: 11436505
Incident Date October 11, 2021
Consumer Location BLACKSHEAR, GA
Vehicle Identification Number KMHDU46DX9U****
Summary of Complaint: The contact owned a 2009 Hyundai Elantra. The contact stated while the vehicle was parked she was notified that there was smoke coming from the engine compartment. The contact stated that flames were coming from under the hood and the fire department was called to extinguish the fire. The fire department report was filed. The contact stated that prior to the failure the ABS and brake warning lights were illuminated. The vehicle was taken to an independent mechanic who informed the contact that he could not determine why the brake light was illuminated but advised that the failure could be related to a wire. The vehicle was not repaired. The vehicle was taken to another independent mechanic who was unable to inspect the vehicle. The contact stated that the independent mechanic advised her that the vehicle was safe to drive. The vehicle was not taken to a dealer for diagnosis or repairs. The contact researched the failure online and related the failure NHTSA Campaign Number: 20V061000 (SERVICE BRAKES, HYDRAULIC). The contact stated that she did not receive a recall notice. The vehicle was deemed a total loss by the fire department. The manufacturer was not made aware of the failure. The approximate failure mileage was 17,000.

September 24, 2021 NHTSA ID NUMBER: 11434225
Components: ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 11434225
Incident Date September 18, 2021
Consumer Location DEERFIELD BEACH, FL
Vehicle Identification Number kmhdu46d88u****
Summary of Complaint: The contact owns a 2008 Hyundai Elantra. The contact stated that while driving when a person waved the driver down that there was smoke coming

from the vehicle. The contact mentioned that the vehicle was driven some more until the contact noticed that there was heat come up the leg on the driver's side. The contact stated that once exit from the vehicle, noticed that there were flames coming from the hood. The fire department extinguished the fired and informed that it was due to electrical. A police report was filed. The dealer was not contacted. The vehicle was not repaired. The vehicle was towed to a junkyard. The manufacturer was not notified of the failure. The approximate failure mileage was 113,000.

August 30, 2021 NHTSA ID NUMBER: 11430960
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11430960
Incident Date August 29, 2021
Consumer Location DAVENPORT, FL
Vehicle Identification Number KMHDU46DX8U****
Summary of Complaint: Our car was sitting under our carport and got know on door that our car was on fire! We call 911 the cam and put fire ot that had also taken all the siding off the side of the house. Firemen said fire started under hood they thought. We believe that this fire was caused by a short circuit in abs module. We looked at recalls tonight and found this out.

April 6, 2021 NHTSA ID NUMBER: 11406786
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11406786
Incident Date April 6, 2021
Consumer Location BELLEVIEW, FL
Vehicle Identification Number KMHDU46D58U****
Summary of Complaint: I WAS LAYING ON THE COUCH ASLEEP AND WOKE UP TO A SOUND ALMOST LIKE FIREWORK GOING OFF LOOKED OUT MY WINDOW AND SAW THE ENTIRE FRONT END IN FLAMES. CAR HADN'T BEEN DRIVEN SINCE 6PM THAT NIGHT. NOTICED FIRE AROUND 12AM.

February 1, 2021 NHTSA ID NUMBER: 11391064
Components: SERVICE BRAKES, AIR
NHTSA ID Number: 11391064
Incident Date January 29, 2021
Consumer Location PALATKA, FL
Vehicle Identification Number KMHDU46D97U****
Summary of Complaint: TL* THE CONTACT OWNS A 2007 HYUNDAI ELANTRA. THE CONTACT STATED WHILE THE VEHICLE WAS PARKED IN THE DRIVEWAY, IT SPONTANEOUSLY CAUGHT FIRE. THERE WERE NO

REPORTED INJURIES. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. THERE WAS NO POLICE REPORT FILED. THE LOCAL DEALER WAS NOT CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE CONTACT STATED THE FAILURE WAS SIMILAR TO NHTSA CAMPAIGN NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC). THE FAILURE MILEAGE WAS 160,000.

January 12, 2021 NHTSA ID NUMBER: 11387766
Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, SERVICE BRAKES
NHTSA ID Number: 11387766
Incident Date December 29, 2020
Consumer Location BAYTOWN, TX
Vehicle Identification Number KMHDU4AD0AU****
Summary of Complaint: 2010 HYUNDAI ELANTRA: RECENTLY EXPERIENCED A VEHICLE FIRE. IT OCCURRED ON TUESDAY, DECEMBER 29, 2020. . I PARKED MY VEHICLE ON THE STREET PER USUAL AND MAYBE 15 MINUTES AFTER ARRIVING HOME FROM WORK MY MOTHER BEGAN YELLING THAT WAS MY VEHICLE WAS IN FLAMES! I OPENED THE FRONT DOOR AND SAW IT WAS INDEED IN FLAMES AND POPPING AND SMOKING. I IMMEDIATELY CALLED 911 WHOM SENT OUT THE FIRE DEPARTMENT. AFTER THEY WERE ABLE TO DISTINGUISH THE FIRE, THEY DETERMINED THE CAUSE TO BE ELECTRICAL IN NATURE CONSIDERING THE BATTERY OF THE VEHICLE WAS COMPLETELY GONE. I HAVE THE CASE NUMBER AS WELL. MY VEHICLE WAS TURNED OFF AND PARKED AND RANDOMLY CAUGHT FIRE. THANKFULLY I WASNT IN IT WHEN IT HAPPENED OR THINGS COULD HAVE BEEM ALOT WORSE. BUT I AM NOW WITHOUT A VEHICLE AND ON TOP OF THAT I HAD TO PAY TO GET THE VEHICLE REMOVED FROM MY APARTMENTS PROPERTY.

December 23, 2020 NHTSA ID NUMBER: 11384674
Components: ELECTRICAL SYSTEM, SERVICE BRAKES
NHTSA ID Number: 11384674
Incident Date September 1, 2020
Consumer Location GAP, PA
Vehicle Identification Number KMHDU46D77U****
Summary of Complaint: TL* THE CONTACT OWNED A 2007 HYUNDAI ELANTRA. THE CONTACT STATED THAT SHE PARKED HER VEHICLE AT HOME FOR ABOUT AN HOUR AND A NEIGHBOR INFORMED HER OF A FIRE IN THE FRONT ENDUNDER THE HOOD. THE VEHICLE WAS PARKED

IN THE CONTACT'S DRIVEWAY AND THE FIRE DEPARTMENT WAS CONTACTED TO PUT OUT THE FLAMES. THE VEHICLE WAS COMPLETELY ENGULFED IN FLAMES AND DESTROYED. THE CONTACT RECENTLY RECEIVED A RECALL LETTER NHTSA NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC). THE INSURANCE COMPANY DETERMINED THAT THE FIRE WAS MOST LIKELY ELECTRICAL SINCE THE VEHICLE HAD BEEN FOR OVER AN HOUR. THE DEALER AND MANUFACTURER HAD NOT BEEN CONTACTED. THE FAILURE MILEAGE WAS 120,000.

September 29, 2020 NHTSA ID NUMBER: 11361727
Components: SERVICE BRAKES, ENGINE, FUEL/PROPULSION SYSTEM
NHTSA ID Number: 11361727
Incident Date September 28, 2020
Consumer Location EUGENE, OR
Vehicle Identification Number KMHDU46D58U****
Summary of Complaint: THE CAR WENT UP IN FLAMES WHILE PARKED IN OUR DRIVEWAY. IT HAD NOT BEEN DRIVEN FOR AT LEAST 4 HOURS. IT COULD HAVE CAUGHT OUR HOUSE ON FIRE IF NOT FOR THE QUICK RESPONSE BY THE FIRE DEPARTMENT.

May 19, 2020 NHTSA ID NUMBER: 11325178
Components: SERVICE BRAKES, ENGINE
NHTSA ID Number: 11325178
Incident Date May 17, 2020
Consumer Location ORLANDO, FL
Vehicle Identification Number KMHDU46D77U****
Summary of Complaint: TL* THE CONTACT CALLED ON BEHALF OF THE VEHICLE OWNER HIS STEPSON. THE CONTACT STATED WHILE THE STEPSON'S VEHICLE A 2007 HYUNDAI ELANTRA WAS PARKED IN FRONT OF AN APARTMENT COMPLEX, THE VEHICLE CAUGHT ON FIRE. THE CONTACT WAS ALERTED BY THE FIRE DEPARTMENT WHOM EXTINGUISHED THE FIRE AND FILED A REPORT. THE CONTACT STATED THAT THE ENGINE COMPARTMENT WAS BURNT. THERE WAS NO WARNING INDICATORS ILLUMINATED PRIOR TO THE FAILURE. THE VEHICLE WAS TOTALED. THE CONTACT STATED THAT HE WAS INFORMED OF NHTSA CAMPAIGN NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC) BY THE INSURANCE COMPANY HOWEVER, THE VIN WAS NOT INCLUDED IN THE RECALL. THE CONTACT CALLED AN UNKNOWN HYUNDAI DEALER IN ORLANDO, FL AND WAS REFERRED TO THE MANUFACTURER. THE CONTACT CALLED THE MANUFACTURER

SEVERAL TIMES AND WAS UNABLE TO REACH A LIVE AGENT. THE
FAILURE MILEAGE WAS UNKNOWN.

April 23, 2020 NHTSA ID NUMBER: 11322016
Components: SERVICE BRAKES, HYDRAULIC
NHTSA ID Number: 11322016
Incident Date April 23, 2020
Consumer Location NASHVILLE, AR
Vehicle Identification Number KMHDU46D39U****
Summary of Complaint: TL* THE CONTACT OWNED A 2009 HYUNDAI
ELANTRA. THE CONTACT STATED THAT WHILE THE VEHICLE PARKED
AND UNOCCUPIED, THERE WAS A LOUD NOISE AND THE CONTACT
DISCOVERED THAT THE VEHICLE CAUGHT ON FIRE IN FRONT OF THE
RESIDENCE. THE FIRE DEPARTMENT HAD TO EXTINGUISH THE FIRE AND
A REPORT WAS FILED. THE CONTACT MENTIONED THAT THE VEHICLE
WAS DESTROYED. THERE WERE NO INJURIES OR PROPERTY DAMAGE
REPORTED. IT WAS UNKNOWN IF A DEALER WAS INFORMED OF THE
FAILURE. THE MANUFACTURER WAS NOT MADE AWARE OF THE
FAILURE. THE VIN WAS INCLUDED IN NHTSA CAMPAIGN NUMBER:
20V061000 (SERVICE BRAKES, HYDRAULIC) HOWEVER DUE TO THE
VEHICLE WAS NOT TAKEN TO THE DEALER DUE TO THE PANDEMIC. THE
FAILURE MILEAGE WAS 126,000.*DT *JB

April 14, 2020 NHTSA ID NUMBER: 11321087
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11321087
Incident Date February 18, 2020
Consumer Location SAINT PETERS, MO
Vehicle Identification Number KMHDU46D38U****
Summary of Complaint: MY 2008 HYUNDAI CAUGHT FIRE IN MY GARAGE
ON FEBRUARY 18, 2020. THE FIRE DESTROYED MY CAR AND MY
GARAGE. MY NEIGHBOR HAPPENED TO BE TAKING HIS DOG OUT AT 4:00
AM AND SMELLED SMOKE. HE LOOKED OVER AND SAW SMOKE COMING
OUT OF MY GARAGE.HE FRANTICALLY RANG THE DOORBELL, WOKE ME
AND MY HUSBAND UP AND WE CALLED 911. WE COULD HAVE DIED AS A
RESULT. *TR

April 10, 2020 NHTSA ID NUMBER: 11320744
Components: SERVICE BRAKES, HYDRAULIC, ENGINE
NHTSA ID Number: 11320744

1
2
3
4
5
6
7
8
9

Incident Date July 31, 2018
Consumer Location IOLA, TX
Vehicle Identification Number KMHDU46D88U****
Summary of Complaint: TL* THE CONTACT OWNED A 2008 HYUNDAI
SONATA. THE CONTACT STATED THE VEHICLE WAS PARKED IN THE
DRIVEWAY AT HER HOME AND CAUGHT ON FIRE INDEPENDENTLY. THE
FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A FIRE
DEPARTMENT REPORT WAS FILED. THE VEHICLE WAS DEEMED A TOTAL
LOSS. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE
CONTACT STATED SHE RECENTLY RECEIVED NHTSA CAMPAIGN
NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC) AND BELIEVES
THIS WAS THE CAUSE OF THE VEHICLE FIRE. THE FAILURE MILEAGE
WAS APPROXIMATELY 150,000. *BF*JB

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

April 7, 2020 NHTSA ID NUMBER: 11320432
Components: SERVICE BRAKES, AIR, ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 11320432
Incident Date March 27, 2020
Consumer Location JACKSONVILLE, FL
Vehicle Identification Number KMHDU46D27U****
Summary of Complaint: TL* THE CONTACT OWNS A 2007 HYUNDAI
ELANTRA. WHILE PARKED THE VEHICLE CAUGHT FIRE. NO INJURIES
WERE REPORTED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED
THE CONTACT STATED THAT AFTER PARKING THE VEHICLE
APPROXIMATELY 2 HOURS LATER THE VEHICLE CAUGHT FIRE AND
FLAMES WERE PRESENT COMING FROM UNDER THE ENGINE
COMPARTMENT. THE FIRE DEPARTMENT WAS CALLED TO THE SCENE
AND EXTINGUISHED THE FLAMES. THE VEHICLE WAS DESTROYED AND
TOWED AWAY. A FIRE DEPARTMENT REPORT WAS TAKEN AT THE
SCENE. NO INJURIES WERE REPORTED. THE CAUSE OF THE FAILURE
WAS NOT DETERMINED. THE LOCAL DEALER AND MANUFACTURER
WERE NOT NOTIFIED. THE CONTACT LATER RECEIVED A RECALL
NOTICE FOR NHTSA RECALL CAMPAIGN NUMBER: 20V06100 (SERVICE
BRAKES) REGARDING AN ELECTRICAL SHORT THAT MAY CAUSE A FIRE.
THE FAILURE MILEAGE WAS 190,000.

25
26
27

February 26, 2020 NHTSA ID NUMBER: 11311711
Components: ENGINE
NHTSA ID Number: 11311711
Incident Date February 18, 2020

28

---

CLASS ACTION COMPLAINT – 19
Case No. 8:22-cv-00300
011082-11/1808185 V1

Consumer Location SAINT PETERS, MO
Vehicle Identification Number KMHDU46D38U****
Summary of Complaint: THE CAR WAS PARKED IN GARAGE. AT 4:40 AM MY
NEIGHBOR WOKE ME UP TO TELL ME MY GARAGE WAS ON FIRE.
FIREFIGHTERS CAME AND SAW THAT THE CAR WAS ON FIRE WHICH
BURNT DOWN THE WHOLE CAR AND MY GARAGE

February 19, 2020 NHTSA ID NUMBER: 11310173
Components: AIR BAGS, STRUCTURE, ENGINE
NHTSA ID Number: 11310173
Incident Date February 1, 2020
Consumer Location TAMPA, FL
Vehicle Identification Number KMHDU46D97U****
Summary of Complaint: SOME TIME BETWEEN APPROXIMATELY BETWEEN
12:00 AM AND 4:00 AM ON 2/1/2020, THE VEHICLE CAUGHT FIRE ON IT'S
OWN (IT WAS PARKED AND OFF) AND BADLY BURNED OUR
GARAGE/HOME CAUSING EXTENSIVE PROPERTY DAMAGE TO THE
GARAGE AND INTERIOR OF OUR HOME.

February 12, 2020 NHTSA ID NUMBER: 11308829
Components: SERVICE BRAKES
NHTSA ID Number: 11308829
Incident Date January 31, 2020
Consumer Location CAMANO ISLAND, WA
Vehicle Identification Number KMHDU46D88U****
Summary of Complaint: 14 HOURS AFTER PARKING THE CAR, SMOKE WAS
COMING FROM THE ENGINE COMPARTMENT. FIRE DEPT WAS CALLED, I
DISCONNECTED THE BATTERY AND FIRE DEPARTMENT EXTINGUISHED
SMOKE SOURCE. TOWED TO DEALER, WHO SAID THE ABS SYSTEM
SHORTED CAUSING A FIRE AND DESTROYING WIRING HARNESS.
LUCKILY IT WAS CAUGHT BEFORE THE VEHICLE WAS DESTROYED.

February 7, 2020 NHTSA ID NUMBER: 11307698
Components: SERVICE BRAKES, HYDRAULIC, ENGINE
NHTSA ID Number: 11307698
Incident Date December 29, 2019
Consumer Location HOMESTEAD, FL
Vehicle Identification Number N/A
Summary of Complaint: TL* THE CONTACT OWNED A 2009 HYUNDAI
ELANTRA. THE CONTACT STATED WHILE HIS SON HAD THE VEHICLE

PARKED IN A GARAGE, HE SMELT SMOKE AS FLAMES WERE SEEN COMING FROM UNDER THE HOOD OF THE VEHICLE. THE CONTACT STATED THAT HIS SON WAS ABLE TO EXIT THE VEHICLE WITH NO INJURIES BEFORE IT WAS ENGULFED IN FLAMES. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A FIRE DEPARTMENT REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED A TOTAL LOSS. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE CONTACT STATED RECENTLY RECEIVED EMAIL NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC). THE FAILURE MILEAGE WAS UNKNOWN.

September 29, 2019 NHTSA ID NUMBER: 11258901
Components: ENGINE
NHTSA ID Number: 11258901
Incident Date September 28, 2019
Consumer Location BOCA RATON, FL
Vehicle Identification Number KMHDU46D48U****
Summary of Complaint: MY DAUGHTER'S 2008 HYUNDAI ELANTRA WAS PARKED ON THE STREET OUTSIDE HER APARTMENT COMPLEX. THE FRONT OF THE CAR CAUGHT ON FIRE AFTER THE CAR HAD BEEN PARKED FOR ABOUT 30-35 HOURS.

June 25, 2019 NHTSA ID NUMBER: 11222531
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11222531
Incident Date June 21, 2019
Consumer Location SPRING HILL, FL
Vehicle Identification Number KMHDU46DX8U****
Summary of Complaint: ON JUNE 21, 2019 I WAS ON MY WAY TO TAKE MY SON TO WORK AND I HAD MY GRANDCHILDREN IN THE BACK SEAT. I PULLED OUT OF THE DRIVEWAY AT APPROX. 7:30A.M. AND DROVE ABOUT 100 FEET WHEN MY CAR STARTED SMOKING UNDER THE HOOD, I QUICKLY BACKED UP INTO OUR YARD. I GOT EVERYONE OUT OF THE CAR, MY SON LIFTED THE HOOD AND THERE WAS SMOKE AND FIRE. THE FIRE WAS COMING FROM BEHIND THE BATTERY. WE QUICKLY CALLED 911. MY CAR IS TOTALED. I ONLY HAD PIP INSURANCE AND I AM CURRENTLY WITHOUT A VEHICLE. I WAS NOT AWARE OF ANY RECALLS BECAUSE I PURCHASED THE VEHICLE FROM A PRIVATE OWNER IN 2009 OR 2010. PICTURES ARE ATTATCHED. I NOTICED THE

1
2
3
4

DAY BEFORE THAT MY PASSANGER WINDOWS DID NOT WORK, AND THE
MORNING OF THE FIRE WHEN I TURNED THE CAR ON MY BREAK LIGHT
WAS ON THE DASH, BUT MY EMERGENCY BREAKS WERE NOT LIFTED. . I
DROVE THE CAR THE DAY BEFORE AND DID'NT DRIVE IT AGAIN UNTIL
THE MORNING OF THE FIRE.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

February 12, 2019 NHTSA ID NUMBER: 11176655
Components: ELECTRICAL SYSTEM, SERVICE BRAKES
NHTSA ID Number: 11176655
Incident Date February 9, 2019
Consumer Location OVIEDO, FL
Vehicle Identification Number KMHDU46D68U****
Summary of Complaint: AFTER SITTING FOR 43 HOURS IN OUR DRIVEWAY
THE 2008 HYUNDAI ELANTRA CAUGHT FIRE STARTING ON THE DRIVER'S
SIDE OF THE ENGINE COMPARTMENT AND CONTINUED ACROSS AND
THROUGH THE VEHICLE. IT SHOULD BE NOTED THE VEHICLE HAD A
SMOKING ISSUE IN THE COMPARTMENT A MONTH PREVIOUS AND WAS
TAKEN TO THE HYUNDAI SHOP AND A REPAIR ESTIMATE PROVIDED
THAT INCLUDED THE MASTER CYLINDER AND THE ANTILOCK BRAKE
SYSTEM. AT THAT TIME WHEN THE SMOKE INCIDENT HAPPENED THE
ANTILOCK SYSTEM ENGAGED AND THE BRAKE PEDAL WENT TO THE
FLOOR. I OBSERVED WHERE THE SMOKE WAS COMING FROM AND
POINTED AT THE ABS BLOCK TO THE SERVICE MANAGER. VEHICLE
WENT BACK INTO USE AND I ORDERED PARTS. INSTALLED MASTER
CYLINDER BUT ABS PARTS DID NOT ARRIVE BEFORE VEHICLE
IMMOLATED ITSELF. IN THE 43 HOUR NON USE GAP, THE VEHICLE DID
NOT HAVE THE REMOTE ENTRY FOB USED NOR ANY KEY ENTRY. FIRE
DEPARTMENT PUT THE CAUSE AS BEING AN ELECTRICAL FIRE.

20
21
22
23
24
25
26
27

October 17, 2018 NHTSA ID NUMBER: 11140848
Components: ELECTRICAL SYSTEM, STRUCTURE, ENGINE
NHTSA ID Number: 11140848
Incident Date September 17, 2018
Consumer Location BELMONT, NH
Vehicle Identification Number KMHDU46D29U****
Summary of Complaint: ON 09/17/2018 I WOKE UP AROUND 5 AM TO FIND
THE ELANTRA FULLY ENGULFED IN FLAMES IN THE FRONT END. IT
WASN'T RUNNING, NOTHING LEFT ON, IT HAD NOT BEEN RUN FOR 4
HOURS SO THE ENGINE SHOULD HAVE BEEN COLD. NO DRIVABILITY
PROBLEMS BEFORE. POLICE AND FIRE DEPARTMENT RESPONDED, PUT

28

THE FIRE OUT AND STATED THAT THEY SAW NOTHING SUSPICIOUS ABOUT THE FIRE AND THAT I SHOULD CHECK ON PROBLEMS WITH HYUNDAI. THIS CAR ONLY HAD 70000 MILES ON IT WITH A 10 YEAR 100000 MILE WARRANTEE .I WENT TO THE DEALER, THEY TOLD ME IT WAS NOT COVERED WITHOUT EVEN LOOKING AT IT. THIS CAR WAS COLD, PARKED, NOTHING ON, NO KEYS IN IT, I DON'T SEE ANY REASON IT SHOULD HAVE CAUGHT FIRE. IT WAS A TOTAL LOSS. THANK YOU.

October 9, 2018 NHTSA ID NUMBER: 11139165
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11139165
Incident Date October 11, 2017
Consumer Location JACKSONVILLE, FL
Vehicle Identification Number KMHDU46D18U****
Summary of Complaint: THIS LAST OCTOBER (2017), I WAS WOKEN UP BY NEIGHBORS INFORMING US THAT SMOKE WAS COMING FROM OUR GARAGE. THERE WAS A FIRE THAT STARTED IN THE ENGINE BAY OF MY 2008 (REGULARLY MAINTENANCED) HYUNDAI ELANTRA, AND TOTALED MY CAR, MY WIFE'S CAR, AND EXTENSIVELY DAMAGED MY GARAGE ($15,000 WORTH). THE VEHICLE SHOWED NO SIGNS OF IT ACTING STRANGELY AT ALL. THE FIRE DEPARTMENT CHALKED IT UP TO A "UNEXPLAINED ELECTRICAL FIRE" AS IT SEEMED LIKE IT STARTED FROM AROUND WHERE THE BATTERY WAS.

August 4, 2018 NHTSA ID NUMBER: 11115718
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11115718
Incident Date August 4, 2018
Consumer Location IOLA, TX
Vehicle Identification Number KMHDU46D88U****
Summary of Complaint: THE CAR CAUGHT FIRE AT 1:15 AM AUGUST 4TH 2018. IT HAD NOT BEEN TURNED ON SINCE 5PM AUGUST 2ND. I WAS NOT HAVING ANY ISSUES AT ALL.

March 1, 2018 NHTSA ID NUMBER: 11075623
Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, ENGINE
NHTSA ID Number: 11075623
Incident Date February 25, 2018
Consumer Location MIAMI, FL
Vehicle Identification Number KMHDU46D68U****

Summary of Complaint: CAR CAUGHT ON FIRE IN THE MIDDLE OF THE NIGHT, WHILE PARKED ON MY DRIVEWAY THE ENTIRE DAY. FIRE DEPARTMENT SAID THE CAUSE OF FIRE IS UNKNOWN BUT IT APPEARED TO HAVE START AT THE LEFT SIDE OF THE HOOD.

November 30, 2017 NHTSA ID NUMBER: 11051523
Components: ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 11051523
Incident Date November 25, 2017
Consumer Location GARDEN GROVE, CA
Vehicle Identification Number KMHDU46D88U****
Summary of Complaint: MY CAR SPONTANEOUSLY CATCH FIRE ON ITS OWN. THE CAR PARKED ON MY FRONT YARD FOR AT LEAST 3 HOURS. IT WENT AFLAME, THE WHOLE ENGINE WAS DESTROYED. EVERY THING CAUGHT ON HOME SECURITY CAMERA.

June 3, 2017 NHTSA ID NUMBER: 10993003
Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, ENGINE
NHTSA ID Number: 10993003
Incident Date May 28, 2017
Consumer Location EXPORT, PA
Vehicle Identification Number KMHDU46D38U****
Summary of Complaint: DROVE CAR TO GROCERY STORE 6 MILE ROUND TRIP PARKED CAR IN GARAGE AT 10:15 AM. I PERFORMED YARD WORK IN FRONT OF AND WAS IN AND OUT OF GARAGE FOR 4 HOURS. AT NO TIME WAS THERE A HINT OF SMOKE OR BURNING. THEN CUT GRASS FOR 2 HOURS. AT ABOUT 4 PM SMOKE WAS BILLOWING OUT OF THE GARAGE. I OBSERVED FLAMES AND SMOKE COMING FROM AROUND THE FRONT HOOD. UNABLE TO LIFT HOOD TO REACH FIRE SOURCE WITH EXTINGUISHERS OR GET CAR INTO NEUTRAL TO PUSH OUT OF GARAGE. I WAS DRIVEN BY SMOKE AND FLAME OUT OF GARAGE. BOTH THE 2008 HYUNDAI AND ANOTHER VEHICLE IN THE TWO CAR GARAGE BURNED COMPLETELY. ALL CONTENTS IN GARAGE DESTROYED EXTENSIVE SMOKE DAMAGE THROUGHOUT HOUSE. FIRE FORENSIC INVESTIGATOR THINKS IT WAS CAUSED BY THE BATTERY BUT THERE WAS TOO MUCH DAMAGE TO MAKE MUCH OF AN INFORMED COMMENT AS TO PRECISE REASON CAR CAUGHT FIRE. REASON FOR FIRE IS UNKNOWN. ADVANCED AUTO BATTERY PURCHASED OCTOBER 17, 2014. PART # 121R1. #420 D2LNM1C1Q21B5J. REPAIR OF REAR MAIN SEAL IN JULY 2016 BY COCHRAN OF MONROEVILLE HYUNDAI SERVICE

DEPARTMENT. FOG LIGHTS MINI LAMPS A TOTAL OF TWENTY, 20, LIGHTS (FOG, BREAK, HEADLIGHTS, LICENSE PLATE) FRONT RIGHT AND LEFT, REAR RIGHT AND LEFT WERE REPLACED. REAR LEFT LAMP AND BULB HOUSING REPLACED JUNE 28, 2016 AT A COST OF $236 BY DEALER.

February 25, 2017 NHTSA ID NUMBER: 10956981
Components: UNKNOWN OR OTHER
NHTSA ID Number: 10956981
Incident Date February 25, 2017
Consumer Location MIRAMAR, FL
Vehicle Identification Number KMHDU46D57U****
Summary of Complaint: COLD CAR CATCHES ON FIRE TOTAL LOST. WAS PARKED ON MY DRIVEWAY

October 16, 2010 NHTSA ID NUMBER: 10398944
Components: ELECTRICAL SYSTEM
Incident Date October 16, 2010
Consumer Location STERLING, VA
Vehicle Identification Number KMHDB8AE4AU****
Summary of Complaint: IN OCTOBER 2010 MY 6-MONTH OLD HYUNDAI ELANTRA TOURING CAUGHT FIRE AFTER SITTING IN MY DRIVEWAY FOR NINE HOURS. THE VEHICLE WAS COMPLETELY TOTALED. MY INSURANCE COMPANY (GEICO) SECURED THE CAR AND HIRED A FORENSIC ENGINEERING COMPANY (DOWN FORENSIC ENGINEERING, INC., CARY NC) TO INVESTIGATE THE ORIGIN OF THE FIRE. DOWN CONCLUDED THAT THE FIRE WAS ELECTRICAL AND ORIGINATED IN THE ENGINE COMPARTMENT. HYUNDAI OFFERED TO REIMBURSE MY INSURANCE POLICY DEDUCTIBLES AND TO PAY ME $500 FOR GOOD WILL, BUT HAS REFUSED TO REPLACE THE VEHICLE OR REIMBURSE ME FOR ANY OTHER EXPENSES RELATED TO THE FIRE. AS FAR AS I KNOW, HYUNDAI HAS NOT ISSUED A RECALL OR TSB ON THE CAR.

**Hyundai Elantra Touring MY 2009-2011**

June 6, 2019 NHTSA ID NUMBER: 11218387
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11218387
Incident Date July 12, 2017
Consumer Location JACKSONVILLE, FL
Vehicle Identification Number KMHDB8AE9BU****

Summary of Complaint: VEHICLE CAUGHT FIRE WHILE PARKED IN GARAGE. VEHICLE WAS NOT RUNNING AND HAD NOT BEEN DRIVEN FOR OVER 5 HOURS. FIRE ORIGINATED IN THE DRIVERS SIDE OF THE ENGINE COMPARTMENT.

**Hyundai Entourage MY 2007-2008**

February 2, 2021 NHTSA ID NUMBER: 11394368
Components: SERVICE BRAKES
June 22, 2020 NHTSA ID NUMBER: 11330039
Components: SERVICE BRAKES, HYDRAULIC, ENGINE
NHTSA ID Number: 11330039
Incident Date June 20, 2020
Consumer Location Unknown
Vehicle Identification Number KNDMC233086****
Summary of Complaint: TL* THE CONTACT OWNED A 2008 HYUNDAI ENTOURAGE. THE CONTACT STATED THAT WHILE THE VEHICLE WAS PARKED IN HER DRIVEWAY, SHE WENT OUTSIDE AND NOTICED SMOKE COMING FROM THE UNDER THE HOOD. THE STATED THAT SHE AND FAMILY MEMBERS ATTEMPTED TO EXTINGUISH THE FIRE WITH HOSES AS FLAMES WERE SEEN COMING FROM UNDER THE VEHICLE. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A FIRE AND POLICE DEPARTMENT REPORTS WERE FILED. NO INJURIES SUSTAINED. THE VEHICLE WAS DEEMED A TOTAL LOSS BY THE FIRE DEPARTMENT. THE INSURANCE COMPANY WAS CONTACTED BUT HAS NOT SEEN THE VEHICLE AS OF YET. A LOCAL DEALER WAS NOT NOTIFIED OF THE FAILURE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND A CASE WAS OPENED. THE CONTACT REFERRED THE FAILURE TO NHTSA CAMPAIGN NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC). THE FAILURE MILEAGE WAS APPROXIMATELY 104,000. *LN CONSUMER STATED THERE IS A RECALL ON IT #188.*JB

**Hyundai Santa Fe MY 2007, 2016-2018**

September 4, 2021 NHTSA ID NUMBER: 11431709
Components: ELECTRICAL SYSTEM, SERVICE BRAKES
NHTSA ID Number: 11431709
Incident Date August 27, 2021
Consumer Location MIAMI, FL
Vehicle Identification Number 5XYZT3LB7FG****

Summary of Complaint: Hyundai Santa Fe Sport 2015 was making sounds when vehicle was off. The ABS warning lights were lit on the dashboard (3 warnings in total) once car was turned on. Drove home hoping the sound would go away but it did not. Once home the sound continued without the vehicle being on. Opened the hood and listened for the location of the sound. It was the ABS module on the left. This part then caught on fire while parked and off (keys were out).

January 19, 2021 NHTSA ID NUMBER: 11388883
Components: SERVICE BRAKES
NHTSA ID Number: 11388883
Incident Date January 19, 2019
Consumer Location FORT LAUDERDALE, FL
Vehicle Identification Number 5XYZU3LB5EG****
Summary of Complaint: TL* THE CONTACT OWNED A 2014 HYUNDAI SANTA FE SPORT. THE CONTACT RECEIVED NHTSA CAMPAIGN NUMBER: 20V520000 (SERVICE BRAKES, HYDRAULIC) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS NOT YET AVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER HAD EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE CONTACT HAD EXPERIENCED A FAILURE WHILE THE VEHICLE WAS IN THE DRIVEWAY OF HIS RESIDENCE WITHOUT WARNING AFTER EXITING HIS HOME TO WALK TO HIS VEHICLE. THE CONTACT NOTICED THE VEHICLE WAS ON FIRE INSIDE THE CARPORT WHICH WAS ATTACHED TO THE HOUSE. THE CONTACT RAN BACK IN THE HOUSE CONTACTED THE FIRE DEPARTMENT WITHIN MOMENTS THE VEHICLE AND RESIDENCE WENT UP IN FLAMES. THE FIRE DEPARTMENT WAS CONTACTED CAME OUT AND EXTINGUISHED THE FLAMES. A POLICE REPORT WAS MADE. MEDICAL ATTENTION WAS CONTACTED AND CAME OUT TO THE SEEN BUT WAS NOT NEEDED. THE FIRE DEPARTMENT DEEMED THE VEHICLE AND RESIDENCE A TOTALED. DORAL HYUNDAI 10285 N.W. 12TH STREET, DORAL, FL 33172 (305) 477-4005 CONTACTED THE CONTACT FOR A COURTESY CALL AND WAS INFORMED, FROM THE CONTACT THAT THE VEHICLE WENT UP IN FLAMES. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 130,000. THE PARTS DISTRIBUTION DISCONNECT.

November 6, 2020 NHTSA ID NUMBER: 11373484
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11373484
Incident Date November 6, 2020

Consumer Location BARCELONETA, PR
Vehicle Identification Number 5XYZW3LA8EG****
Summary of Complaint: TL* THE CONTACT OWNED A 2014 HYUNDAI SANTA
FE SPORT. THE CONTACT STATED THAT THE VEHICLE WAS AT STAND
STILL ON THE INSIDE OF THE GARAGE, WHEN SHE HEARD AN
ABNORMAL NOISE AND SHE STARTED TO SMELL SMOKE ODOR. THE
CONTACT STATED HER DAUGHTER NOTICED FIRE UNDER THE VEHICLE.
THE CONTACT STATED SHE SAW AN UNKNOWN LEAK DRIPPING UNDER
THE VEHICLE AND WAS EXPANDING THE FIRE. THE CONTACT STATED
PART OF HER HOUSE ALSO CAUGHT FIRE. THE FIRE DEPART WAS ABLE
TO EXTINGUISH THE FIRE. A POLICE AND FIRE REPORT WAS FILED. THE
CONTACT STATED NO ONE WAS INJURED OR SEEK MEDICAL
ATTENTION, BUT DID FEEL SHORTNESS OF BREATH DUE TO THE SMOKE.
THE VEHICLE WAS NOT DRIVABLE. THE VEHICLE WAS TOTALED. THE
VEHICLE WAS NOT DIAGNOSED OR REPAIRED AS OF YET. A DEALER
WAS NOT CONTACTED. THE MANUFACTURER WAS ATTEMPTED TO BE
CONTACTED BUT HAD NOT BEEN ABLE TO SPEAK TO ANYONE. THE
FAILURE MILEAGE WAS APPROXIMATELY 93,000.

September 17, 2020 NHTSA ID NUMBER: 11355609
Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, ENGINE
NHTSA ID Number: 11355609
Incident Date September 7, 2020
Consumer Location LOS ANGELES, CA
Vehicle Identification Number 5XYZU3LBXGG****
Summary of Complaint: VEHICLE CAUGHT FIRE SPONTANEOUSLY AT A
PARKING LOT. CAR WAS JUST SERVICED AND INSPECTED A MONTH
PRIOR AT THE HYUNDAI DEALER WHERE I PURCHASED IT AND HAD NO
PROBLEMS REPORTED. CAR WAS PARKED AT THE TIME OF THE
INCIDENT. FROM THE INITIAL REPORT FROM THE FIRE DEPARTMENT
THE CAUSE OF THE FIRE WAS A MECHANICAL ISSUE. THE VEHICLE WAS
A TOTAL LOSS.

January 9, 2020 NHTSA ID NUMBER: 11298274
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11298274
Incident Date December 5, 2019
Consumer Location CUMMING, GA
Vehicle Identification Number 5XYZU3LB7DG****

Summary of Complaint: MY HYUNDAI SANTA FE SPORT 2013 MODEL SUDDENLY CAUGHT FIRE WHILE THE VEHICLE WAS IN MOTION. THERE WAS NO ACCIDENT INVOLVED. INCIDENT HAPPENED ON DEC 5, 2019. I AM ATTACHING THE FIRE DEPARTMENT REPORT. MY WIFE WAS DRIVING THE VEHICLE ON CITY ROAD AT A SPEED OF 45 MPH AND SUDDENLY SMOKE STARTED COMING OUT OF HOOD. SHE STOPPED THE VEHICLE, GOT OUT OF IT AND A NEARBY DRIVER CALLED 911. FIRE DEPARTMENT FOLKS REACHED THE LOCATION IN 5 TO 10 MINS AND CONTROLLED THE FIRE.

September 24, 2019 NHTSA ID NUMBER: 11257848
Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER
NHTSA ID Number: 11257848
Incident Date September 20, 2019
Consumer Location Unknown
Vehicle Identification Number N/A
Summary of Complaint: TL* THE CONTACT OWNED A 2017 HYUNDAI SANTA FE. THE CONTACT STATED THAT THE VEHICLE CAUGHT FIRE UNDER THE HOOD WHILE PARKED AND UNOCCUPIED. THE FIRE DEPARTMENT WAS PRESENT, EXTINGUISHED THE FIRE, AND STATED THAT THE FIRE INITIATED AROUND THE BATTERY AREA. A FIRE DEPARTMENT REPORT WAS FILED. THE CONTACT MENTIONED THAT A NEW BATTERY WAS INSTALLED A WEEK PRIOR THE FAILURE. THE MANUFACTURER WAS CONTACTED. THE VEHICLE WAS TOWED AND DEEMED DESTROYED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE DEALER WAS NOT CONTACTED. THE VIN WAS UNKNOWN. THE APPROXIMATE FAILURE MILEAGE WAS 40,000.

July 19, 2019 NHTSA ID NUMBER: 11233444
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11233444
Incident Date July 18, 2019
Consumer Location GIBSON CITY, IL
Vehicle Identification Number N/A
Summary of Complaint: I CALLED THE DEALERSHIP TO REPORT A HOT SMELL IN MY CAR ON TUESDAY. THEY TOLD ME TO BRING IT IN FOR SERVICE INSPECTION. THURSDAY MORNING THE CAR WAS DRIVEN FOR A SHORT TIME AND PARKED IN THE DRIVE WAY AFTER. APPROXIMATELY TWO HOURS TO TWO AND A HALF HOURS LATER THE

CAR CAB WAS FULL OF SMOKE. THE FIRE DEPARTMENT AND SHERIFFS DEPARTMENT BOTH ARRIVED ON SCENE.

May 3, 2019 NHTSA ID NUMBER: 11205494
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11205494
Incident Date May 3, 2019
Consumer Location IVYLAND, PA
Vehicle Identification Number KM8SRDHF4HU****
Summary of Complaint: CAN WAS SITTING FROM 7:00 PM ON 5/2 AND WE WOKE TO FULL ON FIRE FROM REAR OF VEHICLE AT 4:50 AM ON 5/3 - FIRE CO BELIEVES ELECTRICAL

March 27, 2019 NHTSA ID NUMBER: 11191814
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11191814
Incident Date March 27, 2019
Consumer Location LAKELAND, FL
Vehicle Identification Number 5XYZG3AB1CG****
Summary of Complaint: CAME HOME 8 PM. SON CAME HOME SHORTLY AFTER 10 PM. JUST AFTER MIDNIGHT MY CAR ALARM STARTED GOING OFF (CAR LOCKED AND PARKED IN DRIVEWAY), I GOT OUT OF BED LOOKED THROUGH BLINDS AND SAW MY CAR WAS ON FIRE. I RAN TO KITCHEN GRABBED FIRE EXTINGUISHER ATTEMPTED TO PUT OUT FIRE AND CALLED 911. FIRE DEPT DETERMINED FIRE STARTED INSIDE CAR AT WIRING AREA.

July 24, 2018 NHTSA ID NUMBER: 11113354
Components: ENGINE
NHTSA ID Number: 11113354
Incident Date July 17, 2018
Consumer Location ARNOLD, MD
Vehicle Identification Number 5XYZU3LA0EG****
Summary of Complaint: WHILE RETURNING FROM VACATION ON JULY 17, 2018, TRAVELING ON THE NEW JERSEY TURNPIKE FROM BOSTON, MA TO ARNOLD, MD, AFTER APPROXIMATELY TRAVELING FOR 4 HOURS, WITH A STOP 1 HOUR PRIOR TO A REST AREA, WE TOOK EXIT 7A TO PROCEED ONTO I-295 AND THE CAR SUDDENLY LOST ALL POWER. PULLED OVER TO THE SIDE, OPENED HOOD, SMOKE AND FLAMES COMING FROM THE ENGINE WITH NO WARNING. VEHICLE BURNED AND EXPLODED PRIOR

TO THE FIRE DEPARTMENT ARRIVING. VEHICLE IS TOTALLY GONE AND THERE IS A METAL SHELL, THE ENTIRE CAR WAS IN FLAMES AND BURNED UP. THIS HAPPENED VERY QUICKLY WITH NO WARNING. CAR HAD APPROXIMATELY 61,000 MILES, EXTENDED WARRANTY, AND ALL REQUIRED MAINTENANCE HAD BEEN PERFORM BY THE LOCAL HYUNDAI DEALER IN ANNAPOLIS, MD.

March 22, 2018 NHTSA ID NUMBER: 11080980
Components: ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 11080980
Incident Date March 2, 2018
Consumer Location BIG RAPIDS, MI
Vehicle Identification Number 5XYZGDAG4BG****
Summary of Complaint: CAR WAS DRIVEN ABOUT 10 MILES AND THEN PARKED INSIDE AN ATTACHED GARAGE. NO ISSUES WERE PRESENT DURING THE DRIVE. THE IGNITION WAS TURNED OFF AND KEY REMOVED FROM VEHICLE. AFTER APPROXIMATELY 1 HOUR HAD PASSED THE CAR STARTED ON FIRE. FLAMES WERE VISIBLE BEHIND THE FRONT RIGHT HEADLIGHT AND FRONT RIGHT WHEEL. LUCKILY NO ONE WAS HARMED. THE FIRE CAUSED SIGNIFICANT DAMAGE TO THE GARAGE AND HOME. FIRE DEPARTMENT INVESTIGATION CONCLUDED THAT THE CAUSE OF THE FIRE WAS NOT EXTERNAL TO THE VEHICLE.

January 30, 2018 NHTSA ID NUMBER: 11065937
Components: ELECTRICAL SYSTEM, STRUCTURE
NHTSA ID Number: 11065937
Incident Date January 11, 2018
Consumer Location CHATTANOOGA, TN
Vehicle Identification Number KM8SNDHF7EU****
Summary of Complaint: VEHICLE SPONTANEOUSLY BURNED IN A SKI AREA PARKING LOT IN MAINE. FIRE STARTED AT REAR LEFT (DRIVER'S SIDE) OF CAR. THE CAR WAS DRIVEN APPROXIMATELY 15 MINUTES IN THE MORNING AND PARKED FOR OVER 4 HOURS WHEN LOCAL POLICE AND FIRE WERE NOTIFIED OF A CAR BURNING. BY THE TIME I RETURNED TO THE CAR, THE FIRE HAD BEEN EXTINGUISHED. ALTHOUGH NO CAUSE OF ORIGIN WAS DETERMINED, IT APPEARS THE FIRE IGNITED FROM AN ELECTRICAL ISSUE IN THE REAR LEFT. THE BACK HALF OF THE VEHICLE WAS HEAVILY DAMAGED. MUCH OF MY PERSONAL PROPERTY WAS SALVAGEABLE AND ANY BAGS WHICH BURNED/MELTED DID SO FROM THE OUTSIDE IN, A FURTHER INDICATION THAT THE VEHICLE FIRE

STARTED WITH A VEHICLE ISSUE. IT WAS THE FIRST DAY THE CAR
EXPERIENCED ABOVE FREEZING TEMPS IN ABOUT 3 WEEKS. I NOTE
THAT BECAUSE THERE WAS A CANADA ONLY RECALL OF 2013 HYUNDAI
SANTA FES FOR RISK OF FIRE WHEN SALT GRIME ENTERS THE REAR
PARKING SENSORS (WHICH MY VEHICLE HAD) AND SHORT CIRCUITS - IT
APPEARS THE RISK OF FIRE DUE TO THIS ISSUE CAN OCCUR WHEN THE
VEHICLE IS PARKED AND OFF. FORTUNATELY, NOBODY WAS HURT AND
ONLY MY PERSONAL PROPERTY WAS IMPACTED - THIS COULD HAVE
BEEN MUCH WORSE IF THE CAR WAS PARKED IN MY HOUSE GARAGE, A
HOTEL GARAGE, WHILE DRIVING, ETC. A THREE YEAR OLD CAR
BURNING FOR NO APPARENT REASON, SEEMS LIKE A POTENTIAL
PUBLIC SAFETY RISK, AND SHOULDN'T HAPPEN TO A CAR OF ANY AGE.
HAPPENED IN A SMALL RURAL AREA - NO FIRE DEPT REPORT, POLICE
SAID THEY WOULD WRITE A REPORT BUT I HAVE NOT RECEIVED. THE
CAR IS CONSIDERED A WRITE-OFF BY THE INSURANCE COMPANY.
FOLLOWING IS A LINK TO THE CDN RECALL INFO:
HTTP://WWW.AUTOFOCUS.CA/NEWS-EVENTS/LATEST-
RECALLS/HYUNDAI-RECALLS-13-700-SUVS-FOR-FIRE-RISK

**Hyundai Tucson MY 2014-2021**

February 17, 2022 NHTSA ID NUMBER: 11452621
Components: UNKNOWN OR OTHER, ENGINE
NHTSA ID Number: 11452621
Incident Date February 11, 2022
Consumer Location MILL SPRING, NC
Vehicle Identification Number KM8J33A22GU****
Summary of Complaint: On Friday, September 11, 2022, I had just returned from
running errands. I parked the car, which had no warning lights on whatsoever, and
exited the vehicle. A few seconds later, smoke started streaming out from under the
hood. I popped the hood but did not open it, and started toward the house to get some
water, thinking that something was overheated. Before I had taken ten steps, flames
were shooting out from the hood. I called 911, but before the fire department arrived,
part of my house also caught fire. It has been inspected by the fire marshal and my
insurance company.

October 3, 2019 NHTSA ID NUMBER: 11265995
Components: UNKNOWN OR OTHER, ENGINE
NHTSA ID Number: 11265995
Incident Date September 19, 2019

---

CLASS ACTION COMPLAINT – 32
Case No. 8:22-cv-00300
011082-11/1808185 V1

Consumer Location PORT WENTWORTH, GA
Vehicle Identification Number KM8J33A47KU****
Summary of Complaint: 1.3 MILES AWAY FROM THE DEALERSHIP I PURCHASED THE 2019 HYUNDAI TUCSON IT STARTED TO SMOKE. 5 MINUTES LATER IT WAS ON FIRE!! IT HAD LESS THAN 400 MILES ON IT AND I'VE YET TO FIND OUT WHAT EXACTLY CAUSED THE FIRE. HYUNDAI OR THE DEALERSHIP WON'T TELL ME. THE FIRE CAME FROM THE PASSENGER SIDE UNDER THE HOOD. THE VEHICLE STARTED SMOKING WHEN I ATTEMPTED TO START IT AND CAUGHT ON FIRE WHILE OFF.

### Kia Sedona MY 2006-2010

November 29, 2021 NHTSA ID NUMBER: 11441970
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11441970
Incident Date November 18, 2021
Consumer Location MINERAL WELLS, TX
Vehicle Identification Number KNDMB233666****
Summary of Complaint: The contact owns a 2006 Kia Sedona. The contact stated while the vehicle was parked in a parking lot, the vehicle erupted in flames without warning. Fire marshals were called and extinguished the fire. No one was injured and a report was taken. The contact mentioned a possible smoke inhalation from the smoke. The vehicle was towed to the contact's residence. The manufacturer was informed of failure and was awaiting a response. The failure mileage was approximately 150,000.

October 29, 2021 NHTSA ID NUMBER: 11438659
Components: ELECTRICAL SYSTEM, SERVICE BRAKES
NHTSA ID Number: 11438659
Incident Date April 26, 2021
Consumer Location SAINT PETERSBURG, FL
Vehicle Identification Number KNDMB233486****
Summary of Complaint: [XXX] owned a 2008 Kia Sedona minivan, VIN #[XXX]. This was his only vehicle at the time. On or about April 26, 2021, [XXX] heard a loud noise coming from the driveway and went outside to investigate. The van was engulfed in flames, mainly in the engine compartment. He attempted to put the fire out himself. His neighbor called the Pinellas Park fire department who responded and put out the fire. The vehicle was a total loss. The van had been parked for approximately five hours after he used it earlier that day to pick up children from school The

spontaneous vehicle fire was a serious safety risk, and he is fortunate to have not lost his home in the fire along with the vehicle. The day before the fire, the ABS indicator light on the dash came on. He made an appointment to have the van serviced on April 27, but the fire destroyed the vehicle before it could be looked at. Shortly after this happened, [XXX] learned of Manufacturer Recall Number SC186; NHTSA Recall Number 20V088. He was never notified by Kia North America, before or after the fire which destroyed the vehicle. [XXX] has opened case number [XXX] with and was assured that Kia would be providing reimbursement for the Kia Sedona vehicle he had to replace. Kia North America requested pictures of the fire damaged vehicle, which he sent to them. He offered to allow Kia to inspect the wreckage of the vehicle, but no action was ever taken despite assurances that Kia would send a representative to inspect the vehicle. In September 2021, Kia North America stopped responding to Mr. Brackett, and no longer returns his or my communication. If the NHTSA requires any more information, please contact my office. /s [XXX] Florida Bar #[XXX] [XXX] INFORMATION Redacted PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).

September 25, 2020 NHTSA ID NUMBER: 11361085
Components: ELECTRICAL SYSTEM, ELECTRONIC STABILITY CONTROL, SERVICE BRAKES
NHTSA ID Number: 11361085
Incident Date September 24, 2020
Consumer Location FAIRFIELD, IL
Vehicle Identification Number KNDMB233076****
Summary of Complaint: THE KIA VAN WAS PARKED , TURNED OFF, KEYS WERE REMOVED, OUTSIDE IN OUR BUSINESS PARKING LOT. A PERSON DRIVING BY NOTICED IT WAS ON FIRE AND CALLED THE FIRE DEPARTMENT. THIS HAPPENED AROUND 12 AM. (MIDNIGHT) THE LOCAL FIRE DEPARTMENT RESPONDED TO THE CALL AND REPORTED TO THE SCENE.

April 20, 2020 NHTSA ID NUMBER: 11321732
Components: ELECTRICAL SYSTEM, SERVICE BRAKES
NHTSA ID Number: 11321732
Incident Date April 19, 2020
Consumer Location MADERA, CA
Vehicle Identification Number KNDMB233666****
Summary of Complaint: TL* THE CONTACT OWNS A 2006 KIA SEDONA. THE CONTACT STATED THAT WHEN HER HUSBAND WAS PARKING THE VEHICLE IN HER DRIVEWAY, SHE NOTICED THAT SMOKE BEGAN

EMITTING FROM UNDERNEATH THE VEHICLE; MOMENTS LATER, THE VEHICLE CAUGHT FIRE. THE CONTACT WAS UNAWARE IF THERE WERE ANY ILLUMINATED WARNING LIGHTS PRIOR TO THE FAILURE. THE CONTACT WAS ABLE TO GRAB A WATER HOSE AND EXTINGUISH THE FIRE INDEPENDENTLY. THE CONTACT'S HUSBAND, WITH THE HELP OF SOME NEIGHBORS, WAS ABLE TO MANUALLY PUSH THE VEHICLE OUT OF THE DRIVEWAY AND PARK IT ON THE SIDE OF THE STREET. THE CONTACT STATED PRIOR TO THE FIRE, SHE HAD RECEIVED A RECALL NOTIFICATION FOR NHTSA CAMPAIGN NUMBER: 20V088000 (ELECTRICAL SYSTEM, SERVICE BRAKES, HYDRAULIC) HOWEVER, THE PARTS TO DO THE REPAIR WERE UNAVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE MANUFACTURER NOR THE DEALER WERE NOTIFIED OF THE FAILURE OR THE RECALL. THE FAILURE MILEAGE WAS UNKNOWN. VIN TOOL CONFIRMS PARTS NOT AVAILABLE.

April 7, 2020 NHTSA ID NUMBER: 11320439
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11320439
Incident Date March 24, 2020
Consumer Location Unknown
Vehicle Identification Number KNDMB233466****
Summary of Complaint: TL* THE CONTACT OWNS A 2006 KIA SEDONA. THE CONTACT STATED THAT WHILE HIS WIFE WAS DRIVING THE VEHICLE, THE VEHICLE'S ABS WARNING LIGHT SUDDENLY BEGAN TO ILLUMINATE AND THE WARNING SOUNDER BEGAN TO CHIME. AS HIS WIFE BEGAN TO PULL INTO THEIR GARAGE, THE CONTACT NOTICED SMOKE COMING FROM THE UNDER THE HOOD OF THE VEHICLE. HIS WIFE TURNED OFF THE VEHICLE AND THE CONTACT BEGAN TO PUT OUT THE FIRE. HOWEVER, IT WAS A LITTLE DIFFICULT FOR THE CONTACT TO EXTINGUISH THE FIRE, SO THE CONTACT DETACHED THE BATTERY, WHICH, MADE IT EASIER FOR THEM TO EXTINGUISH THE FIRE. THERE WERE NO INJURIES. THE FIRE DEPARTMENT WAS NOT CONTACTED AND FIRE REPORT WAS NOT MADE. THE CONTACT DID NOT CONTACT THE DEALER. THE VEHICLE HAD NOT BEEN OFFICIALLY DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE AND OPENED A CASE REGARDING THE MATTER. THE MANUFACTURER INFORMED THE CONTACT THAT A FUTURE RECALL NOTICE HAD NOT BEEN RELEASED DUE TO PARTS FOR A REMEDY NOT

YET BEING AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 228,000.

February 10, 2020 NHTSA ID NUMBER: 11308166
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11308166
Incident Date February 9, 2020
Consumer Location Unknown
Vehicle Identification Number KNDMB233676****
Summary of Complaint: MY CAR WAS PARKED IN MY DRIVEWAY, NOT RUNNING, NO KEY IN THE IGNITION, AND HAD NOT BEEN DRIVEN SINCE THE PREVIOUS DAY. ONE OF THE KIDS WENT OUTSIDE TO PLAY AND CAME RUNNING BACK IN TO TELL US THE CAR WAS SMOKING. THERE WAS SMOKING COMING OUT FROM UNDER THE HOOD. MY BOYFRIEND QUICKLY GOT TO IT AND GOT THE BATTERY OUT AND FOUND THE SOURCE AND UNPLUGGED THE ELECTRICAL STABILITY CONTROL MODULE ( I BELIEVE IS WHAT HE CALLED IT) EITHER WAY, THE PLUG AND WIRES WERE FRIED. THE DEALERSHIP STATED THAT HAD WE NOT SEEN THIS IT WOULD HAVE CAUGHT FIRE. I CALLED THE KIA CORPORATE NUMBER AND THEY TOLD ME SORRY BUT ITS AN OUT OF POCKET EXPENSE, MY CAR IS NOT UNDER WARRANTY AND THERE ARE NO RECALLS. THIS IS NOT THE FIRST 07 KIA SEDONA TO HAVE THIS ISSUE BASED ON THE RESEARCH I HAVE DONE. AND HAD WE BEEN SLEEPING WHEN THIS HAPPENED MY HOUSE COULD HAVE CAUGHT FIRE. HAD THERE BEEN CHILDREN IN THIS AT THE TIME THEY COULD HAVE BEEN INJURED.

November 19, 2019 NHTSA ID NUMBER: 11280986
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11280986
Incident Date October 31, 2019
Consumer Location WILLIAMSBURG, OH
Vehicle Identification Number N/A
Summary of Complaint: TL* THE CONTACT OWNS A 2008 KIA SEDONA. THREE HOURS AFTER THE VEHICLE WAS PARKED IN THE DRIVEWAY, FLAMES APPEARED FROM THE REAR OF THE VEHICLE. THE FIRE DEPARTMENT ARRIVED AND EXTINGUISHED THE FLAMES. A FIRE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE.

THE LOCAL DEALER WAS NOT NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 189,000.

May 27, 2018 NHTSA ID NUMBER: 11098160
Components: ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 11098160
Incident Date May 12, 2017
Consumer Location WEEKI WACHEE, FL
Vehicle Identification Number KNDMB233876****
Summary of Complaint: OUR 2007 LOW MILEAGE KIA HAD BEEN PARKED FOR OVER 24 HRS. WHILE SITTING IN OUR DRIVEWAY NOT RUNNING, NO KEYS IN IGNITION, CAUGHT FIRE AND BURNED TO THE GROUND. THE FIRE TRAVELLED TO MY STORAGE BUILDING. WE LOST EVERYTHING IN OUR STORAGE AND OUR VEHICLE. KIA ASSUMES NO FAULT. ATTACHED IS FIRE DEPARTMENT REPORT AND PICS OF THE DAMAGE.

April 26, 2018 NHTSA ID NUMBER: 11090369
Components: ELECTRICAL SYSTEM
NHTSA ID Number: 11090369
Incident Date April 13, 2018
Consumer Location PENDLETON, SC
Vehicle Identification Number KNDMB233X76****
Summary of Complaint: WHILE MY KIA SEDONA WAS PARKED IN THE DRIVEWAY. HAD BEEN PARKED ABOUT AN HOUR WHEN SMOKE SUDDENLY STARTED COMING FROM UNDER THE HOOD. SOON, THE ENTIRE FRONT END WAS ON FIRE AND LOCAL FIRE DEPARTMENT CAME AND PUT THE FIRE OUT. VEHICLE WAS A TOTAL LOSS. KIA COORPERATE SAYS IT'S NOT THEIR PROBLEM.

**Kia Sorento MY 2007-2009, 2014-2015**

June 12, 2021 NHTSA ID NUMBER: 11420671
Components: UNKNOWN OR OTHER
NHTSA ID Number: 11420671
Incident Date June 10, 2021
Consumer Location MAHOPAC, NY
Vehicle Identification Number KNDJC735785****
Summary of Complaint: I pulled into my driveway and the car shut off and I heard a pop, never had an issue before this. Upon getting out I noticed smoke and asked my neighbor to help me open the hood. Upon opening the hood we noticed a fire in the

passenger side of the engine and called 911. The entire car was engulfed in flames within minutes of me getting out of the vehicle, luckily I made it out but what if I had not? I am mentally traumatized along with my family especially my young child. The car is sitting in my driveway still and it is a daily reminder of what happened. There is a recall SC186 on Kia Sorento year 2007-2009 that I was never informed about. Something needs to be done or I will be making sure this is a case that is handled in the court system.

September 10, 2018 NHTSA ID NUMBER: 11128582
Components: ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 11128582
Incident Date September 9, 2018
Consumer Location PALM BAY, FL
Vehicle Identification Number KNDJD735585****
Summary of Complaint: SUNDAY SEPT 9TH AT AROUND 9 - 9:30 AM I SMELLED SMOKE AND WALKED AROUND THE HOUSE AND SMELLED THAT IT WAS COMING FROM THE GARAGE. WHEN I OPENED THE DOOR I SAW FLAMES UNDERNEATH THE CAR AND SMOKE AND FIRE ON TOP OF THE HOOD. I CALLED THE PALM BAY FIRE DEPARTMENT WHEN THEY GOT THERE THEY PUT THE HOSE ON THE CAR UNTIL THE FIRE WAS OUT THEY HAD TO CUT THE HOOD IN ORDER TO FINISH PUTTING OUT THE FIRE. THEY FIRE MARSHALL CAME AND INSPECTED THE VEHICLE IT COULD HAVE BEEN AN ELECTRICAL PROBLEM. WHEN I CALLED KIA CUSTOMER SERVICE THEY GAVE ME A CLAIM NUMBER AND THEY TOLD ME WHAT WOULD YOU LIKE KIA DO FOR YOU . THE CUSTOMER SERVICE AGENT SAID THEY WILL GIVE THE CLAIM TO THE RIGHT DEPARTMENT AND THEY WILL GET BACK TO ME IN 3 TO 5 BUSINESS DAYS. THIS HAPPENED WHILE THE CAR WAS PARKED IN THE GARAGE AND IT HADN'T BEEN TURNED ON SINCE FRIDAY . THIS VEHICLE WAS A 2008 SORENTO WITH LESS THAN 90,000 MILES IT WAS IN GREAT CONDITION ALSO.

April 25, 2018 NHTSA ID NUMBER: 11089996
Components: ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 11089996
Incident Date March 19, 2018
Consumer Location BRANDON, FL
Vehicle Identification Number KNDJD735285****
Summary of Complaint: I DROVE MY 08 KIA SORENTO HOME AT ABOUT 730 AM. I WORK NIGHT SHIFT AND WENT TO SLEEP AND WAS WOKEN UP AT

945 BY EMS TO MY CAR UP IN FLAMES. IT WAS SHOWING NO SIGNS OF ANY PROBLEMS, NOT RUNNING HOT, NOTHING. IT WAS PARKED FOR ABOUT AN HOUR WHEN IT WENT UP IN FLAMES. THE FIRE CHIEF WAS ON THE TRUCK THAT DAY AS HE HAD ORIENTEE'S, AND SAID THE FIRE STARTED BEHIND THE STEERING WHEEL/DASH AND THAT IT WAS AN ELECTRICAL ENGINE FIRE WHICH IS STATED ON MY FIRE REPORT. I CONTACTED KIA THEY TOLD ME IT WAS NO WAY IT WAS THEIR PROBLEM AND HAD TO BE A USER ERROR. I HAVE PHOTOS BUT MY COMPUTER WOULD NOT LET ME UPLOAD THEM FOR A REASON.

**Kia Sportage MY 2008-2009, 2014-2021**

March 12, 2018 NHTSA ID NUMBER: 11078775
Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, ENGINE
NHTSA ID Number: 11078775
Incident Date March 7, 2018
Consumer Location CORPUS CHRISTI, TX
Vehicle Identification Number KNDPB3AC5F7****
Summary of Complaint: THE 2015 KIA SPORTAGE WAS IN THE PARKING LOT AT THE MEDICAL CENTER WHERE MY WIFE HAD A DOCTOR APPOINTMENT. SHE WAS INSIDE APPROXIMATELY 10-15 MINUTES WHEN AN ANNOUNCEMENT WAS MADE ABOUT A RED KIA IN THE PARKING LOT. WHEN SHE LOOKED, IT WAS HER CAR & THE ENGINE COMPARTMENT WAS ENGULFED IN FLAMES. THE POLICE AND FIRE DEPARTMENT WERE ALREADY ON SCENE & THE FIRE WAS EXTINGUISHED. THE CAR WAS A TOTAL LOSS.

    **2.**    **Warranty claims, part sales, and customer complaints lodged with Defendants also alerted Defendants to the Electrical Fire Defect.**

    51.    Defendants knew or should have known about the Electrical Fire Defect because of the sheer number of reports they received regarding the HECU shorts and engine compartment fires. For instance, Hyundai and Kia's customer relations departments, which interact with Hyundai- and Kia-authorized service technicians to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, have received numerous reports of engine problems relating to the HECU shorts and engine compartment fires. Customer relations also collects and analyzes

field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

52.     Defendants' warranty departments similarly review and analyze warranty data submitted by their dealerships and authorized technicians to identify defect trends in its vehicles. Hyundai and Kia dictate that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Hyundai and Kia with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and must also save the broken part should Hyundai and Kia later decide to audit the dealership or otherwise verify the warranty repair. Service centers are meticulous about providing this detailed information about in-warranty repairs to Hyundai and Kia because the automakers will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

53.     Defendants also knew or should have known about the Electrical Fire Defect because of the high number of replacement parts likely ordered from Defendants. All Hyundai and Kia service centers are required to order replacement parts, including HECU modules, directly from Defendants. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Defendants. Defendants routinely monitor part sales reports, and they are responsible for shipping parts requested by dealerships and technicians. Defendants have detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The increase in orders for HECU and ABS control module components used in the Class Vehicles was known to Defendants and should have alerted the automakers to the scope and severity of the Electrical Fire Defect.

54.     Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants likely conduct testing on incoming batches of components, including the HECU and ABS modules at issue

here, to verify that the parts are free from defects and comply with Defendants' specifications. Accordingly, Defendants knew or should have known that the engines used in the Class Vehicles were defective and likely to fail prematurely, costing Plaintiffs and putative Class members thousands of dollars in expenses.

### 3. Defendants' belated, piecemeal, inadequate, and incomplete recalls evidence Defendants' knowledge of the Electrical Fire Defect.

55. From 2016 to present, Defendants have reluctantly and belatedly recalled hundreds of thousands of vehicles—including some Class Vehicles—spanning many models and years for the same Electrical Fire Defect.

56. The recalls have similarities that indicate a common defect: (1) they all generally identify short-circuiting in the HECU as a fire risk; (2) they all focus on mitigating the risks of engine fires, but the proposed remedies do not eliminate such risk; (3) they all direct consumers to park their vehicles outside and away from structures; and (4) they all fail to identify the exact root cause of the defect, leaving consumers without a safe or adequate fix.

57. In November 2016, Kia first recalled MY 2008-2009 Kia Sportage vehicles for the Electrical Fire Defect (approximately 71,704 vehicles), explaining the HECU was improperly sealed and moisture could enter the HECU, corroding the component and creating a risk of engine compartment fires. But the recall failed to disclose the HECU was constantly electrically charged, and Kia did not offer to fix this aspect of the Electrical Fire Defect, nor warn that the Electrical Fire Defect extended to multiple other Hyundai and Kia vehicle models and years.

58. Two years later, in January 2018, Hyundai recalled MY 2006-2011 Hyundai Azera and MY 2006 Hyundai Sonata vehicles for the Electrical Fire Defect (approximately 87,854 vehicles). There, Hyundai America acknowledged the Electrical Fire Defect and its associated fire risk were related to the constantly charged ABS control module, and the proposed remedy was to install a relay in the vehicle's

main junction box that would power down the HECU when the ignition switch was turned off. But Hyundai failed to disclose that moisture entering the ABS control module posed a fire risk also while the car was on, and Hyundai that the Electrical Fire Defect extended to multiple other Hyundai and Kia vehicle models and years.

59.     Starting in 2018, Hyundai and Kia came under public and political scrutiny for thousands of engine fire incidents, including those that are the subject of this suit, reported by consumers across the country, and for the automakers' failure to timely address and fix the affected cars.[7]

60.     In 2019, NHTSA's Office of Defects Investigation ("ODI") opened an investigation into Hyundai and Kia's practices after the Center for Auto Safety petitioned the agency to investigate the plague of non-collision fires in Hyundai and Kia vehicles.[8] In response, Defendants began issuing piecemeal recalls of many different vehicles, including some of the Class Vehicles.

61.     In February 2020, Defendants recalled MY 2007-2010 Hyundai Elantra, MY 2009-2011 Hyundai Elantra Touring, MY 2007-2008 Hyundai Entourage, MY 2007 Hyundai Santa Fe, MY 2006-2010 Kia Sedona, and MY 2007-2009 Kia Sorento for the Electrical Fire Defect (approximately 704,940 vehicles). Defendants admitted they had not ascertained the cause of the moisture entering the HECU, and that the continually powered ABS module posed a fire risk when the vehicle was turned off. The purported remedy was the same relay installation as in the earlier recall.

62.     In August and September 2020, Defendants recalled MY 2013-2015 Kia Optima, MY 2014-2015 Kia Sorento, MY 2019 Kia Stinger, MY 2013-2015 Hyundai Santa Fe Sport, and MY 2019-2021 Hyundai Tucson (approximately 781,018

---

[7] *See* Jackie Callaway, *KIA, Hyundai CEOs refuse to attend Senate hearing to explain cause of car fires*, ABC Action News (Nov. 8, 2018), https://www.abcaction news.com/news/local-news/i-team-investigates/kia-hyundai-ceos-refuse-to-attend-senate-hearing-to-explain-cause-of-car-fires.

[8] NHTSA IDs: PE19003, PE19004.

vehicles). Hyundai claimed the Tucson vehicles had HECU components with defective circuit boards that could cause engine fires while parked or driving, blaming manufacturing quality control for the Defect, and failing to provide a remedy other than inspection of the HECU. Hyundai and Kia claimed the Santa Fe Sport, Optima, and Sorento vehicles also had HECU components susceptible to electrical shorts and fires because of brake fluid leaking into the HECU. Again, Defendants blamed improper manufacturing and provided only inspection and replacement of affected HECU components. Kia claimed the Stingers were susceptible to engine fire originating from the HECU but admitted the cause of fire was unknown. Like prior recalls, the hallmarks of the Electrical Fire Defect were present: short-circuiting HECU components resulting in engine fires, inadequate fixes or no fix at all, and instructions to park the vehicles outside and away from structures.

63.    In December 2020, Hyundai expanded its Hyundai Tucson recall to include MY 2016-2018 vehicles (nearly 500,000 additional vehicles) for the Electrical Fire Defect. The problem was the same—ABS modules that could short-circuit internally and cause and an engine fire while parked or driving—and still no root cause was identified. Hyundai's purported remedy was to inspect and replace the fuse in these components with a lower amperage fuse to "limit the operating current of the ABS module" and update the Electronic Stability Control software.

64.    In December 2020, Kia also expanded its Stinger recall to include MY 2018, 2020-2021 vehicles (nearly 19,000 additional vehicles) for the Electrical Fire Defect. These vehicles were equipped with the same HECU as the recalled Hyundai Tucsons.

65.    In March 2021, Kia recalled MY 2017-2021 Kia Sportage and MY 2017-2019 Kia Cadenza vehicles for the Electrical Fire Defect (approximately 379,931 vehicles). Because of the fire risk emanating from the HECU location, Kia warned drivers to "park outside and away from structures" to avoid catastrophic fires. Again,

an electrical short could occur within the HECU, but Defendants did not know the cause.

66.     One week later, in March 2021, Hyundai recalled MY 2015-2016 Hyundai Genesis and MY 2017-2020 Hyundai Genesis G80 vehicles for the Electrical Fire Defect (approximately 94,646 vehicles). Consumers were advised to park their vehicles outside and away from structures until a new, lower amperage fuse could be installed in the ABS module to limit its operating current.

67.     In April and May 2021 respectively, Hyundai and Kia announced new recalls for MY 2013-2015 Hyundai Santa Fe Sport, MY 2013-2015 Kia Optima, and MY 2014-2015 Kia Sorento vehicles that had been subject to earlier recalls for the Electrical Fire Defect. Defendants claimed these new recalls were necessary to offer a different "fix": installation of a new fuse with lower amperage in the HECU to limit overcurrent and shorting in the component.

68.     In February 2022, Hyundai and Kia recalled an additional 484,577 vehicles for the Electrical Fire Defect: MY 2016-2018 Hyundai Santa Fe, MY 2017-2018 Santa Fe Sport, MY 2019 Santa Fe XL, MY 2014-2015 Hyundai Tucson, MY 2016-2018 Kia K900, and MY 2014-2016 Kia Sportage. As with prior recalls, Defendants could not determine the root cause of the fire risk but pointed to short-circuiting in the HECU or ABS module. Defendants instructed consumers to park their vehicles outside and away from other vehicles or structures until inspection or replacement of the HECU or ABS module and/or its fuse.

69.     All of Defendants' proposed recall remedies for the Electrical Fire Defect fail to eliminate the spontaneous engine compartment fire risk in the Class Vehicles. Defendants' first remedy proposed to replace the connector cover of the defective HECU. Defendants' second remedy proposed to install a relay in the fuse box to stop the HECU's electrical current when the car is off. These two purported remedies do not fix the underlying issue of a HECU design that is already susceptible to moisture

and electrical short, particularly while the car is in operation and the electrical current is active.

70.     Defendants' third remedy proposed installation of a lower amperage fuse into the Class Vehicle's HECU or HECU replacement altogether if the presence of a brake fluid leak is detected in the unit. It is unclear how this purported remedy will eliminate the fire risk, but more importantly, changing the fuse amperage has the capability to unintentionally affect or impair other vehicle components and functions, possibly endangering or damaging Class members.

71.     To date, Defendants have failed to identify the exact root cause of the Electrical Fire Defect or provide an adequate remedy.

72.     Plaintiff Kennedy has experienced an electrical fire in her Class Vehicle. This incident appears consistent with, and on information and belief was caused by, the Electrical Fire Defect. Despite this, Defendants have not recalled Plaintiff Kennedy's MY 2020 Kia Telluride, and Plaintiffs have reason to believe this and other Kia Tellurides are also plagued by the Electrical Fire Defect.

73.     Amidst all these recalls, in November 2020, NHTSA announced consent orders with Hyundai America and Kia America for combined penalties of $210 million over a separate but equally troubling engine defect that caused engine failure and even fire.[9] The consent orders and assessed penalties were the result of Hyundai and Kia's "untimely recalls of over 1.6 million vehicles…and inaccurately report[ing] certain information to NHTSA regarding the recalls." On information and belief, Defendants' misconduct with those recalls is indicative of its misconduct in the instant case.

---

[9] *NHTSA Announces Consent Orders with Hyundai and Kia Over Theta II Recall*, NHTSA (Nov. 27, 2020), https://www.nhtsa.gov/press-releases/nhtsa-announces-consent-orders-hyundai-and-kia-over-theta-ii-recall.

74.     Given Defendants' slow issue of recalls over time for the same Electrical Fire Defect, the recent recall of additional vehicles for the first time, and persistent reports of non-collision engine fires across many models, Plaintiffs have reason to believe the Electrical Fire Defect extends beyond the Class Vehicles plead here or in other related cases. Plaintiffs reserve their right to amend the Class Vehicles as discovery warrants.

**4.     Defendants knew or should have known about the Electrical Fire Defect given Defendants' rigorous pre-sale durability testing.**

75.     Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants conduct tests like pre-sale durability testing on incoming vehicles and components, including the HECU, to verify the parts are free from defects and align with Defendants' specifications.

76.     Hyundai and Kia have long touted the joint-testing facility they maintain in California, known as the "Proving Grounds."[10] Opened in 2005, the Proving Grounds—a $60 million facility—was designed as a "test site for the next-generation Hyundai and Kia vehicles," "reaffirm[ing] the compan[ies'] commitment to designing, testing, and building Hyundai [and Kia] products in the United States for North American consumers."[11] Commentators have also noted the thorough nature of tests conducted at the Proving Grounds, with one such commentator calling them a "searing torture test."[12] According to Hyundai and Kia Senior Research Engineer, Jong-Woo Kim, all vehicles tested at the facility must pass a "30,000 miles … accelerated durability test and a 100,000 miles … field fleet durability test to be sold in North

---

[10] *Hyundai Celebrates Grand Opening of New $60 Mln U.S. Proving Ground*, Hyundai Motor Am. (Jan. 26, 2005), https://www.hyundainews.com/en-us/releases/393.

[11] *Id.*

[12] Graem Fletcher, *Kia's proving grounds a searing torture test* (Sept. 19, 2013), https://driving.ca/kia/auto-news/news/kias-proving-grounds-a-searing-torture-test-3.

America."[13] Such rigorous testing is intended to simulate up to "five years' wear and tear."[14]

77.     Kia conducts expansive presale durability testing on its vehicles to make sure they "endure over a long time without fault."[15] This presale testing includes seven different types of durability tests: (1) an item durability test; (2) a module durability test; (3) a Belgian road test; (4) a high-speed test; (5) a corrosion test; (6) a P/T test; and (7) a vehicle test. Kia conducts these tests in extreme weather conditions including coldness and heat.

78.     In addition, John Juriga, the Director of Powertrain at Kia in 2015, stated that Kia's validation testing is among the toughest in the automotive industry.[16] Among other things, this validation testing runs the engine at maximum throttle (the maximum speed the engine can operate under) while under full load "so we're stressing the components as much as possible and we run it virtually nonstop for 300 hours." After, Kia does an "overrun spec" where it runs it over spec for 10–20 hours to make sure it can survive past the red line limits in order to "make sure these products stay durable in the customers' hands."

79.     Moreover, Kia also uses "the most extreme and rigorous vehicle testing program ever devised by the company."[17] As part of this test, Kia stimulates stop-and-

---

[13] *Enduring the Scorching Desert Heat in Extreme Heat Tests of Hyundai and Kia* (Sept. 15, 2020), https://news.hyundaimotorgroup.com/Article/Enduring-the-Scorching-Desert-Heat-in-Extreme-Heat-Tests-of-Hyundai-and-Kia#none

[14] *See Behind the scenes at Kia's desert testing facility* (June 2, 2018), https://www.autocar.co.uk/car-news/new-cars/behind-scenes-kias-desert-testing-facility.

[15] https://www.kia-uae.com/experience/innovation-story/performance.php (last visited Feb. 24, 2022).

[16] https://www.youtube.com/watch?v=GNPB3RtHN2M (last visited Feb. 24, 2022).

[17] https://www.thenewsmarket.com/global/kia-motors-corporation/death-valley-hot-weather-test-for-all-new-kia-sportage/s/bfe8a9b5-9786-4e73-a648-2970972d74f1 (last visited Feb. 24, 2022).

go driving repeated over several times to "put additional strain on the engine, transmission and HVAC systems and eliminate any possible flaws." In addition, at its Mojave Proving Grounds test site, Kia utilizes a "high-speed oval, gravel off-road tracks, high-vibration road surfaces, brake test facilities and different gradients" that "enable engineers to evaluate and refine the ride, handling, brakes and NVH of prototype and production vehicles."

80.     Touting its safety and durability testing, Kia's website declares, "We put our engines through rigorous testing in the highest, hottest, and coldest places that a car can possibly be before we put them in our cars."[18]

81.     On information and belief, Hyundai conducts durability testing on its vehicles that is like Kia's testing.[19]

82.     Hyundai, when talking about its safety and durability testing, even goes so far as to refer to an "added safety feature" called "Hyundai Assurance," claiming to "leave parts out in the sun for years on end to make sure they'll stand up to even the most extreme heat," "punish our vehicles over rough terrain, hairpin turns and pothole-riddled highways," and "simulate America's most demanding driving conditions, *over and over and over again*" so that Hyundai is "*completely satisfied that every Hyundai is durable, reliable, and battle-tested*." (Emphasis added.)

---

[18] *Performance*, Kia, https://www.kia.com/dm/experience/innovation-story/performance.Theta.html (last visited Feb. 24, 2022).

[19] *See, e.g.*, https://www.hyundai.news/eu/articles/press-releases/hail-rain-or-shine-hyundai-motors-extreme-weather-testing.html (last visited Feb. 24, 2022).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17





**All of our testing means it's ready for all of yours.**

Our California Proving Grounds is a tough place. We leave parts out in the sun for years on end to make sure they'll stand up to even the most extreme heat. We punish our vehicles over rough terrain, hairpin turns and pothole-riddled highways. We simulate America's most demanding driving conditions, over and over and over again. We do all this until we're completely satisfied that every Hyundai is durable, reliable and battle-tested. Then we take what we learn to create some of the safest vehicles on the road. So you can rest assured knowing that your car can handle all the tests you throw at it.

18      83.    The Electrical Fire Defect is precisely the type of defect that such

19   rigorous pre-sale testing would reveal because the Defect is a manufacturing defect in

20   which the HECU is defective and present in the vehicles before they are ever driven.

21   Particularly, given Defendants' durability testing in varying climates and humidity, the

22   HECU's susceptibility to moisture or other leaks would be evident after testing is

23   complete. Consumers have also reported the Electrical Fire Defect early in the life of

24   the car—*e.g.*, the April 2011 NHTSA complaint regarding a 6-month-old Class

25   Vehicle, so it is likely this Defect could manifest well before the 30,000- or 100,000-

26   mile distances to which Defendants claim to test their vehicles.

27
28

**C.    Despite knowledge of the Electrical Fire Defect, Defendants marketed the Class Vehicles as safe, durable, and reliable.**

84.    Defendants have long touted the safety, durability, and performance of their vehicles because they know safety is material to consumers.

85.    On information and belief, Defendants marketed the Class Vehicles' safety, durability, performance, and warranties throughout the class period. This is reflected by the sales brochures Defendants issued for various Class Vehicles, which point to vehicle safety and the purported performance of their vehicles.[20]

86.    Defendants marketed their vehicles to Plaintiffs and putative class members as safe, reliable, and functional. Below are examples pulled from Defendants' vehicle brochures:



QUALITY REPUTATION

Hyundai's reputation for quality isn't hype. It's fact. The Hyundai Elantra received the lowest number of problems per 100 vehicles among compact cars in the proprietary J.D. Power and Associates 2009 Initial Quality Study.

WE VALUE YOUR SAFETY.

Six airbags. Electronic Stability Control. A Tire Pressure Monitoring System. Look at what comes standard on Elantra, and it's clear we value your safety.

**2010 HYUNDAI ELANTRA**



An exceptional level of standard safety includes seven airbags and a host of advanced electronic traction, stability and braking enhancements.

**2015 HYUNDAI SANTA FE SPORT**

---

[20] *See generally Hyundai PDF Sales Brochures*, Auto-Brochures, https://www.auto-brochures.com/hyundai.html (last visited Feb. 24, 2022); *Kia PDF Sales Brochures*, Auto-Brochures, https://www.auto-brochures.com/kia.html (last visited Feb. 24, 2022).



**Hyundai Tucson**
"Highest Ranked Small SUV in Initial and Long-Term Quality"

**2019 HYUNDAI TUCSON**

**OPTIMA** With world-class engineering, outstanding performance and advanced safety systems, the 2013 Kia Optima gives you good reason to be passionate about driving a midsize sedan. It combines bold exterior styling, performance and a spacious, luxurious cabin. It also comes with a long list of technologically advanced features for your entertainment, convenience and safety. Like all Kia models, every Optima comes with an industry-leading 10-year/100,000-mile warranty program.

**2013 KIA OPTIMA**

The new 2014 Kia Sorento provides an outstanding combination of design and performance, featuring sophisticated styling and an available all-new, 290-hp 3.3L Gasoline Direct Injection (GDI) V6 engine. . . . The Sorento is also equipped with advanced active and passive safety features designed to ensure your peace of mind by helping you stay in control.

**2014 KIA SORENTO**

With a combination of the latest available amenities, outstanding performance and advanced safety systems, the Kia Sportage is the ideal compact crossover. . . . For your peace of mind, Sportage is equipped with a wide range of safety systems, including a Traction Control System (TCS) and Electronic Stability Control (ESC). The Sportage has also recently been recognized for its initial quality by J.D. Power, which awarded the 2013 model the "Highest Ranked Sub-Compact CUV in Initial Quality in a Tie."

**2014 KIA SPORTAGE**

87.     On information and belief, Defendants' brochures for other Class Vehicles make similar claims about safety, durability, reliability, performance, and the technological prowess of their vehicles.

88.     On information and belief, Hyundai and Kia developed, created, and controlled all the advertising, marketing, and point-of-sale materials for their respective Class Vehicles. Therefore, Hyundai and Kia could and should have disclosed the Electrical Fire Defect to Plaintiffs and Class members in such materials.

**D.     Defendants' warranties for Class Vehicles**

89.     Hyundai and Kia each issue a New Vehicle Limited Warranty with each Class Vehicle. Under this warranty, Hyundai and Kia agreed to repair defects within the earlier of five years or 60,000 miles.

90.     Hyundai and Kia widely advertise that they offer "America's Best Warranty" and "an industry-leading warranty program," respectively.

91.     On information and belief, Hyundai and Kia provided these warranties, or substantially similar warranties, for all Class Vehicles at all relevant times.

92.     Hyundai and Kia evaded their warranty obligations by failing to disclose the Electrical Fire Defect to consumers and by refusing to repair or cover damages caused by the Defect.

93.     In many instances, consumers must pay for diagnosis of the Electrical Fire Defect—even though the Class Vehicle was manufactured with the Defect—and pay out of pocket for the repair or replacement costs arising from the Defect.

94.     In other instances, consumers that present their Class Vehicles to Hyundai and Kia for warranty repairs are denied and informed nothing is wrong with their vehicle. As a result, after expiration of the warranty period, these Class members must pay for costly repairs related to the Electrical Fire Defect. Such was the case with

the April 2011 NHTSA complaint about an engine fire in a 6-month-old Hyundai Elantra Touring.[21]

95.     Since recalling some of the Class Vehicles, many consumers complained that recall or remedy parts were unavailable through Hyundai and Kia dealerships, delaying help for aggrieved vehicle owners and lessees.

## V.     CLASS ALLEGATIONS

### A.     Class Definitions

96.     Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, the Nationwide Class, and State Classes, defined as:

> **Nationwide Class**
>
> All persons or entities who purchased or leased a Class Vehicle in the United States (including its territories and the District of Columbia).
>
> The Class Vehicles are model year ("MY") 2006-2011 Hyundai Azera; MY 2007-2010 Hyundai Elantra; MY 2009-2011 Hyundai Elantra Touring; MY 2007-2008 Hyundai Entourage; MY 2015-2016 Hyundai Genesis; MY 2017-2020 Hyundai Genesis G80; MY 2007, 2016-2018 Hyundai Santa Fe; MY 2013-2015, 2017-2018 Hyundai Santa Fe Sport; MY 2019 Santa Fe XL; MY 2006 Hyundai Sonata; MY 2014-2021 Hyundai Tucson; MY 2017-2019 Kia Cadenza; MY 2016-2018 Kia K900; MY 2013-2015 Kia Optima; MY 2006-2010 Kia Sedona; MY 2007-2009, 2014-2015 Kia Sorento; MY 2008-2009, 2014-2021 Kia Sportage; and MY 2018-2021 Kia Stinger; and MY 2020 Kia Telluride. Plaintiffs reserve the right to supplement or amend the Class Vehicles after conducting discovery and further investigation.

---

[21] NHTSA ID No.: 10398944.

97.     In addition to the Nationwide Class, and under Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following State Classes as well as any subclasses or issue classes as Plaintiffs may propose or the Court may designate at the time of class certification:

### Minnesota Class

All persons or entities who purchased or leased a Class Vehicle in the State of Minnesota.

### Mississippi Class

All persons or entities who purchased or leased a Class Vehicle in the State of Mississippi.

### New York Class

All persons or entities who purchased or leased a Class Vehicle in the State of New York.

### Texas Class

All persons or entities who purchased or leased a Class Vehicle in the State of Texas.

98.     Excluded from the Classes are individuals who have personal injury claims resulting from the Electrical Fire Defect and conduct alleged herein; Defendants and their subsidiaries, affiliates, officers, and directors; all persons who timely elect exclusion from the Classes; and the Judge(s) to whom this case is assigned and their immediate family.

99.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

100.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

101.   Plaintiffs reserve the right to revise the Class definitions based on information learned through discovery and further investigation.

**B.     Class Action Requirements**

102.   **Numerosity.** Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe, based on information available regarding the nationwide sales and recalls of certain Class Vehicles, there are hundreds of thousands of Class members. The precise number of Class members is unknown to Plaintiffs but may be ascertained from the Defendants' records and vehicle registration records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and published notice.

103.   **Commonality and Predominance.** Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including, without limitation:

a.   Whether Defendants engaged in the conduct alleged herein;

b.   Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

c.   Whether the Class Vehicles have and were sold with the Electrical Fire Defect;

d.   Whether a reasonable consumer would consider the Electrical Fire Defect and its consequences to be material to the decision to purchase or lease a Class Vehicle;

CLASS ACTION COMPLAINT – 55
Case No. 8:22-cv-00300
011082-11/1808185 V1

e.  Whether the Electrical Fire Defect constitutes a safety defect;

f.  Whether Defendants knew of the Electrical Fire Defect but failed to disclose the problem and its consequences to Plaintiffs and Class members;

g.  When Defendants discovered or knew of the Electrical Fire Defect, and what, if anything, they did in response;

h.  Whether Defendants had a duty to disclose the true nature of the Class Vehicles to Plaintiffs and Class members;

i.  Whether Defendants omitted, concealed, or failed to disclose material facts about the Class Vehicles to Plaintiffs and Class members;

j.  Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

k.  Whether Defendants' conduct violates the California Legal Remedies Act, California Unfair Competition Law, California False Advertising Law, the Song-Beverly Act, and any other statutes asserted herein;

l.  Whether Plaintiffs and Class members overpaid for their Class Vehicles;

m.  Whether Plaintiffs and Class members suffered out-of-pocket losses because of the Electrical Fire Defect;

n.  Whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount;

o.  Whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

p.   Whether Defendants continue to unlawfully conceal and misrepresent whether additional vehicles, besides those reported in the press to date, are in fact Class Vehicles.

104. **Typicality.** Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent because Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured by Defendants' wrongful conduct as described herein. Plaintiffs and the Class members suffered damages as a direct, proximate result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs' claims are based on the same legal theories as the claims of the Class members.

105. **Adequacy.** Federal Rule of Civil Procedure 23(a)(4): Plaintiffs' and their counsel are adequate because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

106. **Superiority.** Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all

parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. On information and belief, Class members can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

107.   **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure Rule 23(b)(2): Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and declaratory relief with respect to the Classes as a whole.

## VI.    TOLLING OF STATUTES OF LIMITATIONS

### A.    The discovery rule justifies tolling.

108.   Plaintiffs and Class members did not discover and could not have discovered through the exercise of reasonable diligence, Defendants' deception with respect to the Electrical Fire Defect.

109.   Defendants' concealment is ongoing, as evidenced by their piecemeal recalls and product improvement campaigns, which do not specifically identify the defect or offer a fix.

110.   Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Electrical Fire Defect and misconduct complained of herein, or that Defendants were misrepresenting their true position with respect to the Electrical Fire Defect.

111.   Unless a Class member experienced a catastrophic engine failure, Plaintiff and Class members would have no reason to discover the Electrical Fire Defect, and even if they did experience such a failure, would have no reason to discover the existence of a widespread defect and effort to conceal it.

---

CLASS ACTION COMPLAINT – 58
Case No. 8:22-cv-00300
011082-11/1808185 V1

112.   Plaintiffs and Class members therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants had concealed information about the Electrical Fire Defect in the Class Vehicles, which Plaintiffs discovered shortly before filing this action.

113.   For these reasons, the discovery rule tolls all applicable statutes of limitation with respect to claims as to the Class Vehicles.

**B.      Fraudulent concealment justifies tolling.**

114.   All applicable statutes of limitation are also tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein.

115.   Defendants concealed the Electrical Fire Defect, minimized the scope, cause, and dangers of the Electrical Fire Defect with inadequate recalls and purported remedies, and refused to investigate, address, and remedy the Electrical Fire Defect as it pertains to all Class Vehicles.

116.   Defendants still haven't admitted the Electrical Fire Defect, but Defendants knew about the Defect before the earliest Class Vehicles were sold, based on presale durability testing. That testing put up to 100,000 miles on vehicle engines, while relevant NHTSA complaints included above-described symptomatic engine issues and failures well before 100,000 miles. Additionally, early NHTSA complaints and warranty claims revealed the defect as early as 2011. Defendants' concealment continues to date.

**C.      Estoppel justifies tolling.**

117.   Defendants were under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Electrical Fire Defect, and the inevitable repairs, costs, time, and monetary damage resulting from the Electrical Fire Defect.

118.   Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VII.   CALIFORNIA LAW APPLIES TO THE CLAIMS
## OF THE NATIONWIDE CLASS

119.   California law applies to the nationwide claims because California's interest in this litigation exceeds that of any other state.

120.   Defendant Hyundai America is headquartered in Fountain Valley, California, and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Hyundai vehicles, including the Hyundai Class Vehicles.

121.   Defendant Kia America is headquartered in Irvine, California, and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Kia vehicles, including the Kia Class Vehicles.

122.   Defendants Kia America and Hyundai America each maintain their customer relations, engineering, marketing, and warranty departments at their corporate headquarters in this judicial district. Defendants' customer relations department is responsible for fielding customer complaints and monitoring customer complaints posted to their respective websites or third-party websites.

123.   Defendants Kia America and Hyundai America's warranty and engineering departments are responsible for the decisions to conceal the Electrical Fire Defect from Class members.

124.   Based on the foregoing, Defendants' policies, practices, acts, and omissions giving rise to Plaintiffs' and Class members' claims were developed in, and emanated from, Defendants Kia America and Hyundai America's headquarters in this judicial district in California. As detailed herein, Defendants knew or should have known about the Electrical Fire Defect through the activities of their divisions and affiliated entities located within California. Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

---

CLASS ACTION COMPLAINT – 60
Case No. 8:22-cv-00300
011082-11/1808185 V1

# VIII.  CLAIMS ALLEGED

## <u>COUNT I</u>

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
#### (CAL. CIV. CODE § 1750, *ET SEQ.*)
#### (On Behalf of the Nationwide Class)

125.    Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

126.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants.

127.    Defendants are persons as defined in California Civil Code § 1761(c).

128.    Plaintiffs and the Class members are consumers as defined in California Civil Code §1761(d).

129.    Defendants engaged in unfair and deceptive acts in violation of the CLRA through the practices described herein, and by knowingly and intentionally concealing the Electrical Fire Defect in the Class Vehicles from Plaintiffs and Class members, along with concealing the risks, costs, and monetary damage resulting from the Electrical Fire Defect. These acts and practices violate, at a minimum, the following sections of the CLRA: (a)(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (a)(9) Advertising goods and services with the intent not to sell them as advertised.

130.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

131.   Defendants knew the Class Vehicles were defectively manufactured, were prone to cause fires, and were not suitable for their intended use.

132.   Defendants had a duty to Plaintiffs and Class members to disclose the defective nature of the Class Vehicles because:

a.   Defendants were in a superior position to know the true state of facts about the Electrical Fire Defect and associated repair costs in the Class Vehicles, and the Defect affects a core function of the car;

b.   Plaintiffs and Class members could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until manifestation of the Electrical Fire Defect; and

c.   Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the Electrical Fire Defect and the associated repair costs until manifestation of the Electrical Fire Defect; and

d.   Defendants actively concealed the safety-related Defect and the associated repair costs by knowingly failing to recall the Class Vehicles at an earlier date, or at all, and denying warranty claims arising from the Electrical Fire Defect.

133.   In failing to disclose the Electrical Fire Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

134.   The facts concealed or not disclosed by Defendants to Plaintiffs and Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase the Class Vehicles or to pay a lesser price. Had Plaintiffs and the Class members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

135.    On or about February 24, 2022, Plaintiffs, through undersigned counsel, provided Defendants written notice of their violations of the CLRA under California Civil Code § 1782(a) regarding the Class Vehicles.

136.    Plaintiffs and Class members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

137.    Plaintiffs and the Class members seek all relief available under the CLRA, including equitable relief, damages, punitive damages, and attorneys' fees.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. Code § 17200)
(On Behalf of The Nationwide Class)

138.    Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

139.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants.

140.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

141.    Defendants engaged in unfair competition and unfair, unlawful, or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally concealing the Electrical Fire Defect in the Class Vehicles from Plaintiffs and Class members, along with concealing the risks, costs, and monetary damage resulting from the Electrical Fire Defect. Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Electrical Fire Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the Electrical Fire Defect.

142.   The Electrical Fire Defect causes catastrophic fire in the Class Vehicles, and this constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

143.   Defendants' acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Electrical Fire Defect and suppressing other material facts from Plaintiffs and Class members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members. Defendants' omissions and concealment pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

144.   The injuries suffered by Plaintiffs and Class members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class members should have reasonably avoided.

145.   Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313. Defendants knew or should have known their conduct violated the UCL.

146.   Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, because of Defendants' unfair, unlawful, and deceptive practices.

147.   Plaintiffs seek to enjoin further unlawful, unfair, and fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated because of such practices, and all other relief allowed under California Business & Professions Code § 17200.

1

## <u>COUNT III</u>

2

### VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
3
(CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)
**(On Behalf of the Nationwide Class)**

4       148.   Plaintiffs and the Class reallege and incorporate by reference all

5  paragraphs as though fully set forth herein.

6       149.   Plaintiffs bring this claim on behalf of themselves and the Nationwide

7  Class against all Defendants.

8       150.   California Business & Professions Code § 17500 states: "It is unlawful

9  for any … corporation … with intent directly or indirectly to dispose of real or

10 personal property … to induce the public to enter into any obligation relating thereto,

11 to make or disseminate or cause to be made or disseminated … from this state before

12 the public in any state, in any newspaper or other publication, or any advertising

13 device, … or in any other manner or means whatever, including over the Internet, any

14 statement … which is untrue or misleading, and which is known, or which by the

15 exercise of reasonable care should be known, to be untrue or misleading."

16       151.   Defendants caused to be made or disseminated through California and the

17 United States, through advertising, marketing and other publications, statements that

18 were untrue or misleading, and which were known, or through the exercise of

19 reasonable care should have been known to Defendants, to be untrue and misleading

20 to consumers, including Plaintiffs and the Class members.

21       152.   Defendants violated Section 17500 because their misrepresentations and

22 omissions regarding the safety, reliability, and functionality of the Class Vehicles as

23 described herein were material, untrue, and misleading, and likely to deceive a

24 reasonable consumer.

25       153.   Plaintiffs and Class members have suffered an injury in fact, including

26 the loss of money or property, because of Defendants' unfair, unlawful, and deceptive

27 practices. In purchasing or leasing their Class Vehicles, Plaintiffs and Class members

28

relied on Defendants' misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles. Defendants' representations and omissions were untrue because the Class Vehicles are distributed with a defective HECU. Had Plaintiffs and the Class members known this, they would not have purchased or leased their Class Vehicles or paid as much for them. Accordingly, Plaintiffs and the Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

154.   All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in California and nationwide.

155.   Plaintiffs, individually and on behalf of the Class members, request this Court enter such orders or judgments as necessary to enjoin Defendants from continuing their unfair, unlawful, and deceptive practices, to restore to Plaintiffs and the Class members any money Defendants acquired by unfair competition, including restitution and restitutionary disgorgement, and for such other relief permitted.

## COUNT IV

### VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY
### (CAL. CIV. CODE § 1790, *ET SEQ.*)
### (On Behalf of the Nationwide Class)

156.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

157.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants.

158.   At all relevant times, Defendants were the manufacturer, distributor, warrantor, and seller of the Class Vehicles. Defendants knew or should have known the specific use for which the Class Vehicles were purchased.

159.   Defendants provided Plaintiffs and Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles contained an inherent defect at the time of sale that causes the Class Vehicles to experience spontaneous and catastrophic engine fire.

160.   The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Electrical Fire Defect.

161.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles and engines manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation and would not spontaneously catch fire; and (ii) a warranty that the Class Vehicles would be fit for their intended use–providing safe and reliable transportation–while the Class Vehicles were operated or parked.

162.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the Electrical Fire Defect.

163.   Although privity is not required here because Plaintiffs and Class members are intended third-party beneficiaries of contracts, including implied warranties, between Defendants and their dealerships, Plaintiffs and other Class members had sufficient direct dealings with either Defendants of their agents (*e.g.*, dealerships, Consumer Affairs departments, and technical support) to establish privity of contract between Defendants and Plaintiffs and Class members. Defendants' dealerships were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided therewith; the warranty

1
2
3

agreements were designed for and intended to benefit consumers only. Additionally, privity is excused here because Plaintiffs and Class members relied on statements made by Defendants in choosing to purchase or lease a Class Vehicle.

4
5
6

164.   Defendants' actions, as described herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

7
8
9
10

165.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including, an adequate remedy for the Electrical Fire Defect, or at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

11
12

166.   Under Cal. Civ. Code § 1794, Plaintiffs and Class members are entitled to costs and attorneys' fees.

13

## COUNT V

14
15

**VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, ET SEQ.)**
**(Alleged by Plaintiff Vacchio on behalf of the Minnesota Class)**

16
17

167.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

18
19

168.   Plaintiff Anthony Vacchio brings this action on behalf of themself and the Minnesota Class against all Defendants.

20
21

169.   The Class Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

22
23
24
25
26

170.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN.

27
28

S TAT. § 325F.69(1). Defendants participated in misleading, false, or deceptive acts that violated the Minnesota CFA.

171.   By concealing the Electrical Fire Defect in the Class Vehicles, Defendants engaged in deceptive business practices prohibited by the Minnesota CFA. This Defect would be material to a reasonable consumer.

172.   Defendants' actions, as alleged herein, occurred in the conduct of trade or commerce.

173.   In the course of its business, Defendants concealed the Electrical Fire Defect in the Class Vehicles as alleged herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that Plaintiff Vacchio and the Minnesota Class members rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

174.   By failing to disclose and by actively concealing the Electrical Fire Defect in the Class Vehicles, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Minnesota CFA.

175.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk of engine fire posed by the Electrical Fire Defect in the Class Vehicles.

176.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Vacchio and the Minnesota Class members, about the true safety, reliability, and quality of their vehicles.

177.   Defendants knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff Vacchio and the Minnesota Class.

178.   Defendants knew or should have known that their conduct violated the Minnesota CFA.

179.   Defendants owed Plaintiff Vacchio and Minnesota Class members a duty to disclose the true safety, reliability, and quality of the Class Vehicles because Defendants possessed exclusive knowledge about the Electrical Fire Defect; intentionally concealed the foregoing from Plaintiff Vacchio and Minnesota Class members; made incomplete representations about the safety, reliability, quality, and performance of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and had duties under the TREAD Act and related regulations to disclose and remedy the Electrical Fire Defect.

180.   Because Defendants concealed the Electrical Fire Defect in the Class Vehicles, Plaintiff Vacchio and Minnesota Class members were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the Defect. Further, Plaintiff Vacchio and Minnesota Class members had to spend their time and money to bring their Class Vehicles in for repair. Had Plaintiff Vacchio and Minnesota Class members been aware of the Electrical Fire Defect, they would not have bought their Class Vehicles, or they would have paid less for them.

181.   Defendants' violations present a continuing risk to Plaintiff Vacchio and Minnesota Class members and to the general public. As alleged herein, Defendants' purported "fix" for the Class Vehicles is inadequate and those cars are therefore still defective. Defendants' unlawful acts and practices alleged herein affect the public interest.

182.   As a direct and proximate result of Defendants' violations of the Minnesota CFA, Plaintiffs have suffered injury-in-fact and actual damage as alleged above. As a direct result of Defendants' misconduct, Plaintiff Vacchio and Minnesota Class members incurred damages.

183.   Under MINN. STAT. § 8.31(3a), Plaintiff Vacchio and Minnesota Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

184.   Plaintiff Vacchio and Minnesota Class members also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

## COUNT VI

**VIOLATIONS OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48, ET SEQ.)**
**(Alleged by Plaintiff Vacchio on behalf of the Minnesota Class)**

185.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

186.   Plaintiff Anthony Vacchio brings this action on behalf of himself and the Minnesota Class against all Defendants.

187.   The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised." MINN. STAT. § 325D.44. In the course of their business, Defendants' concealed the Electrical Fire Defect in the Class Vehicles and engaged in deceptive practices by representing that Class Vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; representing that Class Vehicles are of a particular standard, quality, or grade, or that goods are of a particular style or model, if

they are of another; and advertising Class Vehicles with intent not to sell them as advertised.

188.   Defendants participated in misleading, false, or deceptive acts that violated the Minnesota DTPA. By concealing the Electrical Fire Defect in the Class Vehicles, Defendants engaged in deceptive business practices prohibited by the Minnesota DTPA. The Electrical Fire Defect would be material to a reasonable consumer.

189.   Defendants' actions, as alleged herein, occurred in the conduct of trade or commerce.

190.   In the course of their business, Defendants concealed the Electrical Fire Defect in the Class Vehicles, as alleged herein, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

191.   By failing to disclose and by actively concealing the Electrical Fire Defect in the Class Vehicles, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Minnesota DTPA.

192.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous fire risk posed by the Electrical Fire Defect in the Class Vehicles.

193.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Vacchio and Minnesota Class members, about the true safety, reliability, and quality of the Class Vehicles.

194.   Defendants knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff Vacchio and Minnesota Class members.

195.   Defendants knew or should have known that their conduct violated the Minnesota DTPA.

196.   Defendants owed Plaintiff Vacchio and Minnesota Class members a duty to disclose the true safety, reliability, and quality of the Class Vehicles because Defendants possessed exclusive knowledge about the Electrical Fire Defect; intentionally concealed the foregoing from Plaintiff Vacchio and Minnesota Class members; made incomplete representations about the safety, reliability, quality, and performance of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and had duties under the TREAD Act and related regulations to disclose and remedy the Electrical Fire Defect.

197.   Because Defendants concealed the Electrical Fire Defect in the Class Vehicles, Plaintiff Vacchio and Minnesota Class members were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the Defect. Further, Plaintiff Vacchio and Minnesota Class members had to spend their time and money to bring their Class Vehicles in for repair. Had Plaintiff Vacchio and Minnesota Class members been aware of the Electrical Fire Defect, they would not have bought their Class Vehicles, or they would have paid less for them.

198.   Defendants' violations present a continuing risk to Plaintiff Vacchio and Minnesota Class members and to the general public. As alleged herein, Defendants' purported "fix" for the Class Vehicles is inadequate and those cars are therefore still defective. Defendants' unlawful acts and practices alleged herein affect the public interest.

199.   As a direct and proximate result of Defendants' violations of the Minnesota DTPA, Plaintiffs have suffered injury-in-fact and actual damage as alleged

above. As a direct result of Defendants' misconduct, Plaintiff Vacchio and Minnesota Class members incurred damages.

200.   Under MINN. STAT. § 8.31(3a) and 325D.45, Plaintiff Vacchio and Minnesota Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

201.   Plaintiff Vacchio and Minnesota Class members also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

## COUNT VII

### VIOLATIONS OF THE MISSISSIPPI CONSUMER PROTECTION ACT
### (MISS. CODE ANN. § 75-24-1, *ET SEQ.*)
### (Alleged by Plaintiffs Evans on behalf of the Mississippi Class)

202.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

203.   Plaintiff Brenda Evans brings this action on behalf of themself and the Mississippi Class against all Defendants.

204.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised."

205.   Defendants participated in deceptive trade practices that violated the Mississippi CPA as alleged herein, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that

Class Vehicles are of a particular standard and quality when they are not; and advertising Class Vehicles with the intent not to sell them as advertised. The Electrical Fire Defect would be material to a reasonable consumer.

206. Defendants' actions, as alleged herein, occurred in the conduct of trade or commerce.

207. In the course of their business, Defendants concealed the Electrical Fire Defect in the Class Vehicles as alleged herein, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

208. By failing to disclose and by actively concealing the Electrical Fire Defect in the Class Vehicles, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Mississippi CPA.

209. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous fire risk posed by the Electrical Fire Defect in the Class Vehicles.

210. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Evans and Mississippi Class members, about the true safety, reliability, and quality of the Class Vehicles.

211. Defendants knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff Evans and Mississippi Class members.

212. Defendants knew or should have known that their conduct violated the Mississippi CPA.

213.   Defendants owed Plaintiff Evans and Mississippi Class members a duty to disclose the true safety, reliability, and quality of the Class Vehicles because Defendants possessed exclusive knowledge about the Electrical Fire Defect; intentionally concealed the foregoing from Plaintiff Evans and Mississippi Class members; made incomplete representations about the safety, reliability, quality, and performance of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and had duties under the TREAD Act and related regulations to disclose and remedy the Electrical Fire Defect.

214.   Because Defendants concealed the Electrical Fire Defect in the Class Vehicles, Plaintiff Evans and Mississippi Class members were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the Defect. Further, Plaintiff Evans and Mississippi Class members had to spend their time and money to bring their Class Vehicles in for repair. Had Plaintiff Evans and Mississippi Class members been aware of the Electrical Fire Defect, they would not have bought their Class Vehicles, or they would have paid less for them.

215.   Defendants' violations present a continuing risk to Plaintiff Evans and Mississippi Class members and to the general public. As alleged herein, Defendants' purported "fix" for the Class Vehicles is inadequate and those cars are therefore still defective. Defendants' unlawful acts and practices alleged herein affect the public interest.

216.   As a direct and proximate result of Defendants' violations of the Mississippi CPA, Plaintiffs have suffered injury-in-fact and actual damage as alleged above. As a direct result of Defendants' misconduct, Plaintiff Evans and Mississippi Class members incurred damages.

217.   Plaintiff Evans and Mississippi Class members seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## COUNT VIII

**BREACH OF MISSISSIPPI'S IMPLIED WARRANTY OF MERCHANTABILITY**
**(MISS. CODE ANN. § 75-2-314))**
**(Alleged by Plaintiff Evans on behalf of the Mississippi Class)**

218.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

219.   Plaintiff Brenda Evans brings this action on behalf of themself and the Mississippi Class against all Defendants.

220.   Defendants were merchants with respect to motor vehicles within the meaning of MISS. CODE ANN. § 75-2-104(1).

221.   Under MISS. CODE ANN. § 75-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff Evans and Mississippi Class members purchased or leased their Class Vehicles.

222.   The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

223.   The Class Vehicles are inherently defective in that they have defective HECU components that cause spontaneous engine compartment fires, thereby causing an increased likelihood of serious injury or death or property damage.

224.   Defendants were provided notice of these issues by numerous complaints filed against them, NHTSA complaints, internal investigations, warranty claims, and by numerous individual letters and communications sent by Plaintiffs and Class members before or within a reasonable amount of time after Defendants issued the recalls and the allegations about the Electrical Fire Defect became public.

225.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IX

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(DECEPTIVE ACTS AND PRACTICES)**
**(N.Y. GEN. BUS. LAW § 349)**
**(Alleged by Plaintiff Briaddy on behalf of the New York Class)**

226.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

227.   Plaintiff Minda Briaddy brings this action on behalf of themself and the New York Class against all Defendants.

228.   New York General Business Law ("NYGBL") Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state ..." Material omissions are also actionable under NYGBL § 349.

229.   All alleged herein, Defendants violated NYGBL Section 349 because they misrepresented, concealed, and omitted material facts concerning the Class Vehicles, specifically the existence of the Electrical Fire Defect.

230.   Defendants used a deceptive act or practice concerning the Electrical Fire Defect and the Class Vehicles that was likely to mislead a reasonable consumer acting reasonably under the circumstances, such as Plaintiff Briaddy and the New York Class.

231.   Defendants failed to disclose material information about the Electrical Fire Defect and the Class Vehicles, which Defendants possessed and of which consumers, like Plaintiff Briaddy and the New York Class, were unaware. Defendants' failure to disclose this material information about the Electrical Fire Defect and the Class Vehicles was likely to mislead a reasonable consumer acting

reasonably under the circumstances, such as Plaintiff Briaddy and the New York Class.

232.   Plaintiff Briaddy could not have discovered the existence of the Electrical Fire Defect, or Defendants' deception and responsibility for the Electrical Fire Defect, until shortly before this class action was commenced.

233.   Defendants' deceptive acts and practices alleged herein directly and proximately caused actual damages and an ascertainable monetary loss to Plaintiff Briaddy and the New York Class. Had Plaintiff Briaddy and New York Class members known the truth about the Electrical Fire Defect they would not have purchased or leased the vehicles or would have paid significantly less for them. Plaintiff Briaddy and New York Class members also suffered ascertainable, monetary loss in the form of out-of-pocket expenses, loss of use, and lost value related to the Class Vehicles.

234.   Plaintiff Briaddy and the New York Class seek monetary relief against Defendants in the greater amount of actual damages or statutory damages. Plaintiff Briaddy and the New York Class also seek an order enjoining Defendants' unlawful practices and any other just and proper relief available under NYGBL Section 349.

## COUNT X

**VIOLATION OF THE NEW YORK FALSE ADVERTISING ACT**
**(N.Y. GEN. BUS. LAW § 350)**
**(Alleged by Plaintiff Briaddy on behalf of the New York Class)**

235.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

236.   Plaintiff Minda Briaddy brings this action on behalf of themself and the New York Class against all Defendants.

237.   New York's General Business Law ("NYGBL") Section 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such

advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity. …" N.Y. Gen. Bus. Law § 350-a.

238.   Defendants caused to be made or disseminated through New York, through representations, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff Briaddy and other New York Class Members.

239.   Defendants violated NYGBL Section 350 because they misrepresented and omitted facts regarding the Electrical Fire Defect in New York Class Vehicles, as alleged herein, which were material and likely to deceive a reasonable consumer.

240.   Plaintiff Briaddy and New York Class members suffered injury, including the loss of money or property, because of Defendants' false advertising. In purchasing or leasing their Class Vehicles, Plaintiff Briaddy and New York Class members relied on Defendants' misrepresentations and omissions regarding the safety, quality, functionality, and reliability of the Class Vehicles. Had Plaintiff Briaddy and New York Class members known this, they would not have purchased or leased their Class Vehicles or paid as much for them. Plaintiff Briaddy and New York Class members also suffered ascertainable, monetary loss in the form of out-of-pocket expenses, loss of use, and lost value related to the Class Vehicles.

241.   Plaintiff Briaddy and New York Class members seek monetary relief against Defendants in the greater amount of actual damages or statutory damages. Plaintiff Briaddy and the New York Class also seek an order enjoining Defendants' unlawful practices and any other just and proper relief available under NYGBL Section 350.

## COUNT XI

### BREACH OF NEW YORK'S IMPLIED WARRANTY
### OF MERCHANTABILITY
#### (N.Y. U.C.C. LAW §§ 2-314; 2A-212)
#### (Alleged by Plaintiff Briaddy on behalf of the New York Class)

242.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

243.   Plaintiff Minda Briaddy brings this action on behalf of themself and the New York Class against all Defendants.

244.   Defendants are "merchants" and "sellers" of motor vehicles and the Class Vehicles are "goods" under New York law.

245.   Under New York law, an implied warranty of merchantability attaches to the Class Vehicles under N.Y. U.C.C. §§ 2-314; 2A-212.

246.   The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to electrical short and catastrophic fire, and pose an unreasonable risk of non-collision engine fires due to the Electrical Fire Defect described herein.

247.   Plaintiff Briaddy and New York Class members are third-party beneficiaries of Defendants' implied warranty.

248.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Briaddy and New York Class members have been damaged in an amount to be determined at trial.

## COUNT XII

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND
### CONSUMER PROTECTION ACT
#### (TEX. BUS. & COM. CODE § 17.4 ET SEQ.)
#### (Alleged by Plaintiff Kericha Kennedy on behalf of the Texas Class)

249.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

---

250.   Plaintiff Kericha Kennedy brings this action on behalf of herself and the Texas State Class against all Defendants.

251.   The Texas Deceptive Trade Practices and Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of (i) the use of false, misleading, or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); (ii) "breach of an express or implied warranty," TEX. BUS. & COM. CODE § 17.50(a)(2); or (iii) "an unconscionable action or course of action by any person." TEX. BUS. & COM. CODE § 17.50(a)(3). The Texas DTPA (TEX. BUS. & COM. CODE § 17.46(b)) declares several specific actions to be unlawful, including: "(5) representing that goods or services have. sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have"; "(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertising goods or services with intent not to sell them as advertised." An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). As alleged herein, Defendants engaged in an unconscionable action or course of action and breached implied warranties of merchantability, and thereby caused economic damages to the Texas Class.

252.   In the course of business, Defendants willfully failed to disclose and actively concealed the Electrical Fire Defect and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely

upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

253.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Kennedy and the Texas Class members, about the true quality of and safety risks posed by the Class Vehicles.

254.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff Kennedy and Texas Class members.

255.   Defendants knew or should have known that their conduct violated the Texas DTPA.

256.   Defendants each owed Plaintiff Kennedy and Texas Class members a duty to disclose the Electrical Fire Defect.

257.   Defendants' omissions and misrepresentations about the Electrical Fire Defect present in the Class Vehicles were material to Plaintiff Kennedy and Texas Class members.

258.   Plaintiff Kennedy and the Texas Class suffered ascertainable loss caused by Defendants' misrepresentations and their concealment of and failure to disclose material information. Class members who purchased Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for Defendants' violations of the Texas DTPA.

259.   Defendants had an ongoing duty to all customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicle because of Defendants' deceptive and unfair acts and practices made in the course of their business.

260.   Defendants' violations present a continuing risk to Plaintiff Kennedy and the general public. Defendants' unlawful acts and practices alleged herein affect the public interest.

261.   As a direct and proximate result of Defendants' violations of the Texas DTPA, Plaintiff Kennedy and the Texas Class have suffered injury-in-fact and actual damage.

262.   On or about February 24, 2022, Plaintiffs, through undersigned counsel, provided Defendants with notice of their violations of the Texas DTPA, under TEX. BUS. & COM. CODE § 17.505.

263.   Plaintiff Kennedy and the Texas Class seek monetary relief against Defendants measured as actual damages in an amount to be determined at trial, treble damages for Defendants' knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

264.   Alternatively, or additionally, under TEX. BUS. & COM. CODE § 17.50(b)(3) & (4), Plaintiff Kennedy and the Texas Class are also entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

## COUNT XIII

### BREACH OF IMPLIED WARRANTY
#### (TEX. BUS. & COM. CODE § 2.314)
#### (Alleged by Plaintiff Kericha Kennedy on behalf of the Texas Class)

265.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

266.   Plaintiff Kericha Kennedy brings this action on behalf of herself and the Texas State Class against all Defendants.

---

CLASS ACTION COMPLAINT – 84
Case No. 8:22-cv-00300
011082-11/1808185 V1

267.   At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or should have known of the specific use for which the Class Vehicles were purchased.

268.   Defendants provided Plaintiff Kennedy and the Texas Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles suffer from an inherent defect at the time of sale that causes the Class Vehicles to experience spontaneous and catastrophic engine compartment fires.

269.   The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Electrical Fire Defect.

270.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not spontaneously catch fire; and (ii) a warranty that the Class Vehicles would be fit for their intended use–providing safe and reliable transportation–while the Class Vehicles were being operated.

271.   Contrary to the applicable implied warranties, the Class Vehicles, *viz.* their HECU components, at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the defects which maintain an electrical charge in the Class Vehicles' HECU components and allow moisture to enter the components.

272.   Plaintiff Kennedy and the Texas Class members have had sufficient direct dealings with Defendants or their agents (*e.g.*, dealerships, Consumer Affairs departments, and technical support) to establish privity of contract between Defendants and Plaintiff Kennedy and the Texas Class members. Nonetheless, privity

is not required here because Plaintiff Kennedy and the Texas Class members are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff Kennedy and the Texas Class members relied on Defendants' statements in choosing to purchase or lease a Class Vehicle.

273.   Defendants' actions, as alleged herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Tex. Bus. & Com. Code § 2.314.

274.   As a direct and proximate result of Defendants' breach of implied warranties of merchantability, Plaintiff Kennedy and the Texas Class members are entitled to damages in an amount to be determined at trial.

## COUNT XIV

### FRAUD BY CONCEALMENT (Common Law)
### (Alleged by all Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Subclasses)

275.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

276.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Subclasses against all Defendants.

277.   As alleged herein, Defendants intentionally concealed, suppressed, and omitted the material fact of the Electrical Fire Defect in the Class Vehicles, specifically that the Class Vehicles had a defective HECU that could result in spontaneous and catastrophic engine fire while the vehicle is operated or parked.

278.   Defendants also misrepresented the safety, reliability, quality, durability, and functionality of the Class Vehicles. These representations were false because, unbeknownst to Class members, the Class Vehicles contained the Electrical Fire Defect rendering the vehicles dangerous, unreliable, susceptible to engine fire, and not fit for their ordinary use.

279.   Defendants' misrepresentations and omissions about the Electrical Fire Defect in the Class Vehicles were material because the misrepresentations and omissions alleged herein induced Plaintiffs and Class members to purchase their Class Vehicles when, had they known about the Electrical Fire Defect, they would not have purchased their Class Vehicles or they would have paid less for them.

280.   Defendants knew or should have known about the Electrical Fire Defect before the Class Vehicles were sold due to (1) their involvement in the design, installation, calibration, manufacture, durability testing, and warranty service of vehicles with the engines, (2) their issuance of related recalls for similar issues in other vehicles, and (3) the myriad of relevant complaints about Class Vehicles submitted by consumers and received by Defendants directly, via online sources, and via NHTSA.

281.   Defendants had reason to expect that Plaintiffs and Class members would purchase or lease the Class Vehicles if the Class Vehicles, including their engines and components, were safe, reliable, quality, durable, and functional. Likewise, Defendants knew or should have known that Plaintiffs and Class members would not purchase or lease, or at least pay as much, for the Class Vehicles if they knew they contained the Electrical Fire Defect.

282.   Reasonable consumers, such as Plaintiffs and Class members, would not know about the Electrical Fire Defect in Class Vehicles and that the Defect could, through normal operation and driving or while shut off and parked, spontaneously erupt into fire. Plaintiffs and Class members did not know Defendants concealed these

facts from them. Moreover, as ordinary consumers, Plaintiff and Class members did not, and could not, discover the deception on their own.

283.   Defendants concealed the truth about the Electrical Fire Defect, intending for Plaintiffs and the Class to rely on these misrepresentations and omissions. Plaintiffs and Class members relied on Defendants' misrepresentations and omissions in choosing to purchase or lease their Class Vehicles, believing them to be safe and free from major defects, like the Electrical Fire Defect. Plaintiffs and Class members were reasonable and justified in their reliance on Defendants' representations about the Class Vehicles and omissions about the Electrical Fire Defect because Defendants are multinational automakers well-versed in the design, manufacture, and service of automobiles.

284.   Defendants had a duty to disclose the Electrical Fire Defect to Plaintiffs and Class members because the true facts about the Electrical Fire Defect were known and accessible only to Defendants, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or the Class members unless and until the Defect manifested in their individual vehicle. Additionally, the Electrical Fire Defect is safety related because it can lead to spontaneous and catastrophic engine fire while driving or parked and off. As alleged herein, Defendants denied and concealed the Defect in the face of consumer complaints. Plaintiffs and Class members did not, and could not, discover Defendants' deception on their own.

285.   Defendants also had a duty to disclose the true nature of these Class Vehicles because of their knowledge of the Electrical Fire Defect and issuance of prior and related recalls. By issuing recalls of certain vehicles and representing that these recalls encompassed the full population of affected vehicles, Defendants led consumers and even safety regulators to believe, at least for a time, that they were remedying the engine problems. In fact, these recalls—in addition to being unsuccessful—failed to include hundreds of thousands of additional vehicles that

1    suffered from similar major defects. Moreover, the recalls that Defendants have issued

2    to date do not suffice to remedy the Electrical Defect or make Plaintiffs and Class

3    members whole.

4        286.   Defendants' misrepresentations and omissions were made with

5    knowledge of their falsity, and with the intent that Plaintiffs and Class members rely

6    on them.

7        287.   Plaintiffs and Class members were entitled to rely on Defendants'

8    misrepresentations and omissions because they are purchasers and lessees of

9    Defendants' Class Vehicles, and Defendants have been enriched by the sales of these

10   Class Vehicles.

11       288.   Plaintiffs and Class members reasonably relied on Defendants'

12   misrepresentations and omissions and suffered injury and monetary damages as a

13   direct and proximate result. Had Defendants not concealed the material facts of the

14   safety-related Electrical Fire Defect, Plaintiffs and the Class would not have purchased

15   the Class Vehicles or would have paid less for them. Plaintiffs and Class members also

16   incurred out-of-pocket costs related to the Electrical Fire Defect, loss of use of their

17   Class Vehicles, and diminished value in their Class Vehicles because of Defendants'

18   fraud and the growing public awareness about the Electrical Fire Defect. Accordingly,

19   Defendants are liable to Plaintiffs and the Class for damages in an amount to be

20   proven at trial.

21       289.   Defendants' acts were committed wantonly, maliciously, oppressively,

22   deliberately, with intent to defraud; in reckless disregard of the rights and safety of

23   Plaintiffs and Class members; and to enrich themselves. Their misconduct warrants an

24   assessment of punitive damages in an amount sufficient to deter such conduct in the

25   future, and such amount shall be determined according to proof at trial.

26

27

28

## COUNT XV

### BREACH OF EXPRESS WARRANTY
### (Alleged by all Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Subclasses)

290.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

291.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Subclasses against all Defendants.

292.   Defendants provided all purchasers and lessees of the Class Vehicles, including Plaintiffs and Class members, with the express warranties alleged herein, which formed part of the basis of the bargain. Accordingly, Defendants' warranties are express warranties under state law.

293.   The Class Vehicles and parts affected by the Electrical Fire Defect, including the HECU, were manufactured and distributed by Defendants and are covered by the warranties Defendants provided to all purchasers and lessors of Class Vehicles.

294.   Defendants breached these warranties by selling and leasing Class Vehicles with the Electrical Fire Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing repairs or replacements at no cost to Class members during the applicable warranty periods.

295.   Plaintiffs notified Defendants of the breach within a reasonable time or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. Defendants also knew about the Electrical Fire Defect and yet chose to conceal it and neglect their warranty obligations.

296.   As a direct and proximate cause of Defendants' breach, Plaintiffs and Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class

Vehicles suffered a diminution in value. Plaintiffs and Class members also incurred and will continue to incur costs related to the diagnosis and repair of the Electrical Fire Defect.

297.   Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold a defective product without informing consumers about the Electrical Fire Defect.

298.   The time limits in Defendants' warranties were also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in formation and bargaining power existed between Defendants and Plaintiffs and Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and could fail well before the end of their useful lives.

299.   Plaintiffs and Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of Defendants' conduct alleged herein.

## COUNT XVI

### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *ET SEQ.*)
### (Alleged by all Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Subclasses)

300.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

301.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Subclasses against all Defendants.

302.   Plaintiffs and Class members are consumers within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

303.   Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

304.   The Class Vehicles are consumer products within the meaning of 15 U.S.C. § 2301(1).

305.   Defendants' 5-year/60,000-mile Basic Warranties are written warranties within the meaning of 15 U.S.C. § 2301(6).

306.   Defendants breached the express warranties by:

    a.   Providing a 5-year/60,000-mile Basic Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    b.   Selling and leasing Class Vehicles that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

    c.   Refusing and failing to honor the express warranties by repairing or replacing, free of charge, the Class Vehicles or any of their component parts to remedy the Electrical Fire Defect.

307.   Plaintiffs and Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

308.   Defendants' breach of the express warranties has deprived Plaintiffs and Class members of the benefit of their bargain.

309.   Defendants were afforded a reasonable opportunity to cure their breach of the written warranties and Plaintiffs and Class members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written

warranties would have been futile. Defendants were also on notice of the alleged Electrical Fire Defect from the complaints and service requests it received from Class members, as well as from their own warranty claims, customer complaint data, and parts sales data.

310.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

311.   Defendants provided Plaintiffs with an implied warranty of merchantability in connection with the purchase or lease of their Class Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

312.   Defendants breached their implied warranties, as alleged herein, and are therefore liable to Plaintiffs and Class members under 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share common manufacturing defects in that they contain the Electrical Fire Defect, specifically a defective HECU that causes spontaneous and catastrophic engine fire, leaving occupants of Class Vehicles, bystanders, and property vulnerable to crash, serious injury, damage, and death. Defendants have admitted that the Class Vehicles are defective in issuing their recalls, but the recalls are insufficient to address the Electrical Fire Defect.

313.   In their capacities as warrantors, Defendants had knowledge of the Electrical Fire Defect in the Class Vehicles. Any effort by Defendants to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable.

314.   Any limitations Defendants might seek to impose on their warranties are procedurally unconscionable. There was unequal bargaining power between

1   Defendants and Plaintiffs and Class members, because at the time of purchase and

2   lease, Plaintiffs and Class members had no other options for purchasing warranty

3   coverage other than directly from Defendants.

4        315.   Any limitations Defendants might seek to impose on their warranties are

5   substantively unconscionable. Defendants knew the Class Vehicles were defective and

6   would continue to pose safety risks after the warranties purportedly expired.

7   Defendants failed to disclose the Electrical Fire Defect to Plaintiffs. Thus, Defendants'

8   enforcement of the durational limitations on those warranties is harsh and shocks the

9   conscience.

10        316.   Plaintiffs and Class members have had sufficient direct dealings with

11   either Defendants or their agents (*e.g.*, dealerships, Consumer Affairs departments,

12   and technical support) to establish privity of contract between Defendants and

13   Plaintiffs or Class members. Nonetheless, privity is not required here because

14   Plaintiffs and Class members are intended third-party beneficiaries of contracts

15   between Defendants and their dealerships, and specifically, of Defendants' implied

16   warranties. The dealerships were not intended to be the ultimate consumers of the

17   Class Vehicles and have no rights under the warranty agreements provided with the

18   Class Vehicles; the warranty agreements were designed for and intended to benefit

19   consumers. Finally, privity is also not required because the Class Vehicles are

20   dangerous instrumentalities due to the Electrical Fire Defect alleged herein.

21        317.   Under 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action

22   and are not required to give Defendants notice and an opportunity to cure until such

23   time as the Court determines the representative capacity of Plaintiffs under Rule 23 of

24   the Federal Rules of Civil Procedure.

25        318.   As a direct and proximate result of Defendants' breach of the written and

26   implied warranties, Plaintiffs and Class members sustained monetary damages and

27   other losses in an amount to be determined at trial. The amount in controversy of

28

---

CLASS ACTION COMPLAINT – 94
Case No. 8:22-cv-00300
011082-11/1808185 V1

Plaintiffs' individual claims meets or exceeds the sum or value of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of Class members, seek all damages permitted by law, including actual damages, consequential damages, statutory damages, specific performance, diminution in value of their vehicles, and any other relief as deemed appropriate in an amount to be proven at trial. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and Class members in connection with the commencement and prosecution of this action.

319.   Further, Plaintiffs and the Magnuson-Moss Subclass are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Based on Defendants' continuing failures to fix the known dangerous Electrical Fire Defect, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix their failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted. Plaintiffs also seek establishment of a Hyundai and Kia-funded program for Plaintiffs and Class members to recover out of pocket costs incurred in attempting to rectify the Electrical Fire Defect in their Class Vehicles.

## COUNT XVII

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
#### (Alleged by all Plaintiffs on behalf of the Nationwide Class or, Alternatively, the State Subclasses)

320.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

321.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Subclasses against all Defendants.

322.   All contracts contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

323.   A contractual relationship existed between Plaintiffs and Class members and Defendants. As alleged herein, Defendants were the designers, manufacturers, distributors, and warrantors of the Class Vehicles. Defendants provided Plaintiffs with both an express warranty arising from Defendants' 5-year/60,000-mile Basic Warranties, as well as an implied warranty of merchantability in connection with the purchase or lease of their Class Vehicles. Defendants warranted that Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

324.   At all relevant times, Plaintiffs and Class members adhered to the warranty requirements for their Class Vehicles relevant to the Electrical Fire Defect.

325.   Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiffs and Class members of the Electrical Fire Defect in the Class Vehicles, and failing to repair this Defect fully and properly, thereby depriving Plaintiffs and Class members of the benefits under the contract. As a result of Defendants' breach of their duty of good faith and fair dealing, Plaintiffs were monetarily damaged, suffering out of pocket costs related to the Electrical Fire Defect, loss of use, and diminution of value in the Class Vehicles. Had Plaintiffs and Class members known about the Electrical Fire Defect, they would not have purchased or leased the Class Vehicles, or they would have paid less for them.

326.   Defendants acted in bad faith and with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of Nationwide and State Class members, respectfully request the Court enter judgment in their favor and against Defendants, as follows:

A.     Certification of the proposed Nationwide and State Classes under Rule 23 of the Federal Rules of Civil Procedure, including appointment of Plaintiffs as class representatives and appointment of Plaintiffs' counsel as Class Counsel;

B.     Damages, including actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

C.     An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

D.     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order requiring Defendants to repair, recall, or replace the Class Vehicles and extend the applicable warranties to a reasonable period of time, or at a minimum, provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Electrical Fire Defect;

E.     An award of reasonable costs and attorney fees; and

F.     Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: February 25, 2022          HAGENS BERMAN SOBOL SHAPIRO LLP

                                  */s/ Thomas E. Loeser*
                                  Thomas E. Loeser (SBN 202724)

                                  Steve W. Berman (*pro hac vice* to be filed)
                                  Thomas E. Loeser (SBN 202724)
                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                  1301 Second Avenue, Suite 2000
                                  Seattle, WA 98101
                                  Telephone: (206) 623-7292
                                  Facsimile: (206) 623-0594
                                  steve@hbsslaw.com
                                  toml@hbsslaw.com

                                  Christopher R. Pitoun (SBN 290235)
                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                  301 N. Lake Avenue, Suite 920
                                  Pasadena, CA 91101
                                  Telephone: (213) 330-7150
                                  Facsimile: (213) 330-7152
                                  christopherp@hbsslaw.com

                                  Rachel E. Fitzpatrick (*pro hac vice* to be filed)
                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                  11 W. Jefferson Street, Suite 1000
                                  Phoenix, AZ 85003
                                  Telephone: (602) 840-5900
                                  Facsimile: (602) 840-3012
                                  rachelf@hbsslaw.com

                                  *Attorneys for Plaintiffs*